HERBERT R. MORRISON, an Infant, by FRED J. MORRISON, His Guardian ad Litem, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 31142.)

FRED J. MORRISON, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 31143.)

Court of Claims, July 1, 1953.

*Lewis B. Parmerton* for claimants.

*Nathaniel L. Goldstein, Attorney-General (Lawrence H. Wagner* of counsel), for defendant.

Major, J. These claims were filed to recover damages sustained by Herbert R. Morrison, an infant, for personal injuries and property damage, and by Fred J. Morrison, father of said infant claimant, for medical expenses and loss of services. Both claimed that on the 15th day of October, 1951, at about 11:30 A.M. in the morning, Herbert R. Morrison was driving his motorcycle easterly up a curving hill on Route 17 in Tioga County, and at a point about one mile easterly from the hamlet of Tioga Center, near a place called "Devil's Elbow", collided with a deer which was standing in the middle of the highway.

The claimant, Herbert R. Morrison, testified that immediately before the accident, he was traveling between forty and forty-five miles per hour, and did not see the deer until he was about fifteen feet from it. He further testified that he did not know where the deer came from. After the accident, the deer was located about seventy-four feet east of the point of impact. The claimant came to a stop approximately 110 feet east of the deer, and the motorcycle was about twenty-two feet east of the claimant. In other words, the motorcycle traveled approximately 206 feet after the accident took place.

At the time of the accident, the claimant, Herbert R. Morrison, was seventeen years of age, and had driven a motorcycle for about one year. Prior to the accident and during 1951, the said claimant traveled Route 17, having lived at Barton which is four miles west of the accident scene, and prior thereto he lived

in Owego for seven years, which is four miles east of the accident scene.

The claimant, Fred J. Morrison, testified that he had been hunting deer in 1950, and 1951, and that he and his son, Herbert R. Morrison, were hunting rabbits east of Owego where there was also good deer hunting. The claimant, Herbert R. Morrison, testified that he had hunted deer around Barton the year previous, but not at " Devil's Elbow ".

The evidence clearly establishes that the point of the accident was not a place used as a crossing by deer. On the southerly side of the highway at the scene of the accident, for about 200 feet east and 100 feet westerly, there is a cliff of shale rock practically perpendicular to the highway, ranging from thirty to fifty feet in height. The shoulder on the north side is four to six feet wide and on the south side from six to eight feet wide. Route 17 is a two lane highway about twenty feet wide. On the south side of the road and opposite the cliff, there is a guard rail from which there is a gradual slope southerly for about 200 to 300 feet, ending at the railroad tracks. At points considerable distances away in both directions from the accident scene, some herds of deer have been seen on several occasions during the winter months, at which time deer seek food in snow-cleared areas.

Tioga County is particularly inhabited by deer. Evidence was offered to show that 1,292 deer were reported shot in said county during the last deer hunting season, and comparable numbers in the two prior years.

The claimants charged the State with negligence, alleging that it was negligent in the construction, reconstruction and maintenance of said highway, and in failing to erect and maintain signs and markers warning the travelers on the highway of the existence of an area where deer congregated at intervals and suddenly crossed the highway, creating a dangerous and hazardous condition for users of the highway.

No evidence was introduced to show that the State was negligent in the construction, reconstruction and maintenance of the highway. The claimant, Herbert R. Morrison, knew the conditions prevailing, or should have realized any imminent danger from deer on the highway. The absence of such signs was not the proximate cause of this accident, and did not contribute thereto.

The general conditions and physical facts indicate that said claimant was traveling much faster than forty to forty-five miles per hour; that he applied his brake, but failed to turn his

vehicle to one side or another so as to avoid hitting the animal. The court finds that in the general operation of the motorcycle, the said claimant was guilty of contributory negligence.

The deer involved was a wild deer. (Conservation Law, § 372.) Wild deer, like all other wild life, are *ferae naturae*, and as such have the inherent characteristic of roaming about at will, knowing no bounds, except those prescribed by nature.

The State is not an insurer of its highways, and has no obligation, except as it may voluntarily assume such obligation to protect its highways against the use thereof by deer or other wild animals while in their natural status.

Article 7 of the Vehicle and Traffic Law (State Traffic Commission) was enacted to secure reasonableness and uniformity in traffic rules and signs on State highways. Section 95-b thereof provides: " The state traffic commission shall have the power and it shall be its duty to adopt uniform rules and regulations, conforming, as far as is practical, with nationally accepted standards, concerning the size, shape, kind, color and type of traffic signs, signals and markings to be used on and along all state highways maintained by the state."

The Legislature has, therefore, delegated to the State Traffic Commission the power and authority to issue certain orders and promulgations which have the effect of law. A book of such orders has been issued by such Traffic Commission entitled: " Manual of Uniform Traffic Control Devices " and a section pertaining to deer is found on pages 55 and 56 thereof, reading as follows:

"DEER CROSSINGS CROSSING SIGN

" This sign shall be used on both sides of locations where deer cross a highway in a well-defined path and evidence exists that this crossing constitutes a traffic hazard. When so used it should be placed 300 feet in advance of the crossing.

" It may also be used to sign a zone where deer cross at random along a stretch of highway, thereby creating a hazard to traffic. When so used it should be erected 300 feet in advance of the beginning of the zone and at intervals of ½ mile within the zone. If the zone is ½ mile or less in length, a sign will be required only at the beginning of the zone. The end of the zone will not be posted by a sign.

" When used to sign a zone, each sign shall be supplemented by a W 142 Auxiliary Mileage sign. The W 142 sign at the beginning of the zone shall state the entire length of the zone in terms of the nearest ½ mile. The W 142 sign supplementing the inter-

228

mediate signs shall state the distance to the end of the zone in terms of the nearest ½ mile.

" This sign shall be used only after a careful determination has been made of the locations of deer crossings. These may be obtained by consultation with the local game protector. It may not be used on state highways without an order of the State Traffic Commission. The State Conservation Department will be consulted by the State Traffic Commission before an order for the use of this sign will be issued."

The specific regulation pertaining to such sign that " It may not be used on state highways without an order of the State Traffic Commission " is a prohibition against such use until ordered by the said commission. There is no evidence that such order was ever issued. Consequently, the erection of such sign is prohibited.

Motion of the State for a dismissal of both the claims of Herbert R. Morrison, an infant, by Fred J. Morrison, his guardian ad litem, and Fred J. Morrison, made herein at the close of the trial is hereby granted, and the said claims are dismissed on the merits.

The foregoing constitutes the written and signed decision upon which judgment may be entered. (Civ. Prac. Act, § 440.)