Dye, J.
 

 In this appeal as of right by the State from a judgment of the Appellate Division, Third Department, affirming an award of damages for personal injuries sustained by each of the claimants in a highway accident, we consider only whether the highway signs and markers, as provided by the State on State highway No. 192 at the point of intersection with town highway No. 365 were reasonably adequate under the circumstances.
 

 The accident occurred on January 20, 1952 at about 6:30 p.m. The claimant Consula Joyce Herron was driving her automobile in an easterly direction along and through Route No. 192 toward Lake Placid. The claimant Maryanne McDevitt and another adult were riding with her as passengers in the front seat. While she had never previously driven on that particular stretch of highway, she was familiar with winter driving conditions in the Lake Placid area. The State and town highways at the point in question were covered with hard-packed snow and ice so that the macadam could not be seen. The snowplows had piled waist-high snowbanks along the shoulders of the road. It was ‘ ‘ real winter weather ’ ’ — snowing, blowing and foggy — and, as the witness agreed, “ more so ” in the vicinity of the intersection; visibility was poor and limited to about 40 to 50 feet ahead. The car lights were on low beam, the heater and defroster were on and the windshield wipers were working, but only the arcs thus made were clear, as the rest of the windshield and windows were “ milky looking ”. The driver was keeping her car close to the right edge of the plowed highway, following the line of the snowbank, it being impossible by visual means alone to see where the pavement ended and the shoulder began. As they approached Brighton Corners, the driver reduced her speed to 20 to 25 miles per hour and — thinking she was still on State highway Route No. 192 — continued to follow the line of the snowbank which took her via the right fork of the Y into the town highway Route No. 365 and down a slight grade toward a bridge over a small creek. Due to the snow and ice conditions, the car went into a skid. The driver applied the brakes but ‘1 it didn’t do any good ” and the car went out of control and crashed
 
 *543
 
 through the rail of the bridge, causing the injuries complained of.
 

 According to the record, Route No. 192, as it approaches Brighton Corners, is straight and level and then veers to the left on a gradual open curve, being joined at its apex by town Route No. 365 which gradually veers to the right on a curve of 24 degrees, 54 minutes on a radius of 233 feet and then straightens out to a bridge across a small creek. The bridge is about 200 feet from the intersection on a downgrade amounting to 9.8 feet for the whole distance. As one proceeded easterly along Route No. 192, at a point about 600 feet west of the intersection there was a metal sign bearing the legend £< N. Y.” above and “ 192 ” below. At a point approximately 520 feet from the intersection there was a second sign bearing the legend “ Warning Cross roads N. Y. State Highway” with a three-pronged symbol, X, which had been formed by painting white the lower left or fourth prong of an otherwise conventional X mark. At about 60 to 80 feet from the intersection there was a road marker bearing the legend “ N. Y. 192 ’ ’ with an arrow pointing left. On the island of land formed by the intersection of Routes No. 192 and No. 365, there were located two signs, one a rectangular sign bearing the legend “ Saranac Lake 7 ” and below that
 
 ‘ ‘
 
 Saranac Inn 11 ’ ’ with an arrow underneath the same pointing to the right. The other sign bore the legend “ N. Y. 192 ” with an arrow pointing to the left.
 

 All of these signs had been erected prior to the adoption of the Manual of Uniform Traffic Control Devices in 1948 (Vehicle and Traffic Law, § 95-b). According to testimony by a licensed engineer, given in behalf of both parties, the signs in question were of the type prescribed by regulations when erected; all had white backgrounds with black markings and none were reflectorized; that all were in good serviceable condition; that the painting out of a part of an X to form an oblique-shaped symbol was in keeping with usual practice and in harmony with existing rules and regulations for the designation of a road intersection at an angle or at a curve such as there existed.
 

 The claimants now contend that such signs — only two of which were seen, notwithstanding that they were there and could or should have been seen by persons looking ahead — were, nonetheless, so inadequate as to charge the State with actionable negligence for the reason that such signs did not conform to the manual with respect to coloring, reflectorization and precise placement.
 

 
 *544
 
 Initially, the respective claims were asserted and filed on the theory that the highway and its bridge at the scene were defective and negligently maintained by the State. When it developed at the trial that the highway Route No. 365 and its bridge at the point where the accident occurred were actually under the jurisdiction of and maintained by the Town of Brighton, and after the proof was all in, the trial court permitted the claimants by letter to amend their claims to show that they relied solely on the failure of the State to erect and maintain proper warning signs on its highway, Route No. 192.
 

 The duty of the State to give warning of the hazards existing on highways maintained by it is no longer open to doubt
 
 (Canepa
 
 v.
 
 State of New York,
 
 306 N. Y. 272) and such warning signs must be erected wherever necessary and be reasonably adequate for the intended purpose
 
 (Ziehm
 
 v.
 
 State of New York,
 
 270 App. Div. 876;
 
 Le Boeuf
 
 v.
 
 State of New York,
 
 169 Misc. 372, affd. 256 App. Div. 798, affd. 281 N. Y. 737).
 

 The case of
 
 Barna
 
 v.
 
 State of New York
 
 (267 App. Div. 261, affd. 293 N. Y. 877), relied on in the courts below, should not be read as creating a duty on the part of the State to warn of hazards on highways not under its immediate control and maintenance. That case is distinguishable on its facts. There the subject bridge, maintenance of which was a statutory obligation of the railroad (Railroad Law, § 93), connected the ends of two State highways to form a continuous highway over which its users necessarily had to pass. There the evidence established that the bridge was not only defective, but negligently maintained. Here the bridge through which the claimants skidded to their injury was off the State highway and located on a town road over 200 feet distant therefrom and — so far as the record shows — neither the bridge nor its approach was improperly designed, defectively constructed or negligently maintained; nor was the hard-packed snow and ice condition at all unusual for the winter weather existing at the time. Users of the State highway were not obliged to use the bridge on the town road as in the
 
 Barna
 
 case and when they used it, it was pursuant to their own voluntary choice.
 

 The manual resolution in effect at the time of this accident provided:
 
 “
 
 except as otherwise ordered, existing signs, signals and markings now in place on or along State highways maintained by the State may be continued in use until no longer serviceable, at which time they shall be replaced by
 
 *545
 
 signs, signals or markings conforming to the Standards set forth in this Manual.” The courts below seem to have overlooked the fact that, by this directive, the manual is mandatory only in respect to any new signs or replacements (Vehicle and Traffic Law, § 95-b).
 

 In a case involving the State’s failure to conform to the manual, we have recently ruled that existing highway signs lawfully installed prior to the resolution adopting the manual and in conformity with the rules and regulations when erected and which are in good serviceable condition at the time of the accident, are adequate to provide a warning to the reasonably careful driver
 
 (Piragnoli
 
 v.
 
 State of New York,
 
 305 N. Y. 586, affg. 280 App. Div. 849). Under the circumstances of this case, that decision was controlling. We cannot reasonably say that failure of the State to conform the existing signs to the traffic manual at the time and place in question was the proximate cause of this accident.
 

 The judgments in both claims are reversed and both of the claims against the State are dismissed.
 

 Conway, Ch. J., Desmond, Fuld, Froessel and Burke, JJ., concur with Dye, J.; Van Voorhis, J., concurs in the result on the ground that claimants needed no warning signs if, as they testified, they had already slowed to 20 miles per hour.
 

 In each action: Judgment of the Appellate Division and that of the Court of Claims reversed and the claim dismissed.