## (December 22, 1967)

■ Avo Tamm et al., Appellants, v. State of New York, Respondent. (Claim No. 44394.) Avo Tamm, as Administrator of the Estate of Ena Tamm, Deceased, Appellant, v. State of New York, Respondent. (Claim No. 44395.) Peggy D. Saleem et al., Appellants, v. State of New York, Respondent. (Claim No. 44396.) — Staley, Jr., J. Claimants appeal from judgments of the Court of Claims which dismissed their claims. These three claims arose out of an automobile accident which occurred at about 2:00 P.M. on July 23, 1964 at the intersection of State Routes 12 and 79 in the Hamlet of Chenango Forks, Broome County, New York. The claimant Avo Tamm, his wife and two children, and their guest, the claimant Peggy D. Saleem, were returning to Canada after a visit to New York City by way of Route 79 when they were in a collision with a van-type truck owned by the Norwich Express which was proceeding in a northerly direction on Route 12. All of the occupants in the Tamm automobile were injured, and Mrs. Tamm died as the result of her injuries. The intersection of Routes 12 and 79 is a "Y" shaped intersection paved throughout its entire area and, at the time of the accident, white traffic control lines four inches wide were painted in a triangular shape on the pavement. The claimants contend that the State was negligent in that the intersection was not adequately signed; that the existing signs were not placed in accordance with the State's regulations; and that the State failed to give adequate and timely warning of the place where motorists proceeding south on Route 79 should stop before entering Route 12. Although Route 79 runs generally in a northwesterly direction, it turns to the south for a short distance in the area of Chenango Forks. A motorist traveling south on Route 79 in this area, as was the claimant Avo Tamm, would encounter the following signs as

he approached the intersection of Route 12: (a) a speed limit sign indicating the speed limit to be 30 miles per hour; (b) a standard junction sign indicating that he was approaching an intersection of Routes 12 and 79; (c) a railroad crossing sign indicating that he was also approaching a railroad crossing; (d) an intersection sign, again indicating that he was approaching an intersection; (e) route signs with arrow for Route 79 and Route 12; (f) a plainly visible stop sign; and (g) a standard railroad crossing signal with lights close to the railroad crossing just beyond the stop sign. The tracks of the Erie & Lackawanna Railroad run in a northeasterly direction just beyond the stop sign, and the area of the intersection adjoining the southerly line of the railroad tracks is paved from the westerly line of Route 12 to the easterly line of Route 79. The State owes a duty to the users of State highways to give adequate warning of the existing conditions and hazards on its highways. (*McDevitt* v. *State of New York*, 1 N Y 2d 540.) Such signs are also required to be appropriate in design, unambiguous in import and properly placed. (*Canepa* v. *State of New York*, 306 N. Y. 272; *Ziehm* v. *State of New York*, 270 App. Div. 876.) The manual of uniform traffic control devices adopted by the State Traffic Commission, pursuant to section 1680 of the Vehicle and Traffic Law, provides that stop signs shall be erected on the right side of the roadway at, or as near as possible to the point where a vehicle is required to stop and, in general, it shall be no more than 15 or 20 feet from the intersecting roadway, and shall not be placed more than 50 feet from the intersecting roadway except in those isolated cases where it is physically impossible to erect the sign within that distance. The stop sign erected at the intersection of Routes 12 and 79 clearly conforms to these regulations. The fact that the pavement had, prior to the repaving of the area, been painted with a stop bar and sign which had not as yet been repainted on the date of the accident is immaterial, since the regulations, although they permit such signs, do not require their actual use. The claimants were adequately informed and warned of the conditions and hazards which existed on the highway upon which they were traveling, and the State adequately fulfilled its obligations to them. The day was clear, the stop sign was clearly visible and was at a point where the claimant, Avo Tamm, the operator of the automobile, had a clear view of the entire intersection. While the intersection was at a somewhat unusual angle, it was an open intersection with clear visibility in all approaching directions. The Court of Claims found that he did not stop for the sign, and we find adequate support in the record for this conclusion. The proximate cause of the accident was not the negligence of the State, but rather the failure of the claimant Avo Tamm to operate his automobile in a reasonably careful and prudent manner and in reckless disregard of the signs which adequately informed him of the conditions and hazards which existed. Judgments affirmed, without costs. Herlihy, Staley, Jr., and Gabrielli, JJ., concur in a memorandum by Staley, Jr., J., Gibson, P. J. and Aulisi, J., concur in part and dissent in part in the following memorandum by Gibson, P. J. Highway 79 is a generally northwest-southeast route but a few miles north of the accident scene turns and continues south until it merges with Route 12, which runs generally north and south. Claimant operator, a resident of the province of Ontario, who had not previously traveled these highways, while driving south on Route 79, and, so far as appears, within the 30 miles per hour posted speed limit, proceeded to and beyond the railroad tracks crossing Route 79 and then continued the considerable distance to the point of the merger of the highways, where collision occurred with a truck northbound on Route 12. The essence of the claim is that a driver on Route 79 on approaching Route 12 and reasonably receiving the impression that the road continued on, without indication of its

merging, could readily be misled by the signs in advance of the railroad crossing, at least two of which were inaccurate; could mistake the stop sign in place as warning of the railroad crossing (upon which the flasher lights did not then indicate the approach of railroad equipment); and after crossing the tracks was given no warning of the acute-angled intersection — either by a stop sign, properly positioned in accordance with law, or otherwise. The trial court correctly enumerated, as does the majority opinion here, the conglomeration of signs that faced the claimant driver; but neither opinion indicates the patent inaccuracies and deficiencies and the resultant confusion which a careful examination of the exhibits discloses. Thus, one sign so depicts two arrows as to indicate not merging highways but main and secondary roads; and route signs indicate that Route 79 continues straight ahead and that Route 12 goes left and right. More important, however, is the positioning of the octagonal stop sign at a point in advance of the railroad crossing, although, according to the trial court's finding, Route 79 continued from that point some *196 feet* to the point where traffic thereon would enter Route 12; and the then current Manual of Uniform Traffic Control Devices [1958], promulgated pursuant to section 1680 of the Vehicle and Traffic Law, provided that such a stop sign "shall be erected * * * *at, or as near as possible to, the point where the vehicle is required to stop.* In general, it shall be placed no more than *15 or 20 feet* from the intersecting roadway. It shall not be placed more than *50 feet* from the intersecting roadway except in those isolated instances where it is physically impossible to erect the sign within that distance." (§ 24.2; emphasis supplied.) Although the State's failure of compliance appears with close to mathematical certainty, and seems not to have been in substantial dispute below, the majority opinion finds that the sign "clearly conforms". At some time before the accident, and in accordance with the manual, a stop bar was painted on Route 79 *at the intersection* with the word "STOP" in large letters on the road in front of it, but this warning had been obliterated by a resurfacing job some weeks before the accident and had not yet been restored; because, according to the testimony of the State employee in charge of the work, the crews "were busy and didn't get there" prior to the date of the accident. The trial court, without regard to the State's failure to observe its own safety regulations, and observing, indeed, that "it makes no difference that the stop sign may not have been erected and placed in accordance with the Manual", said categorically that the State was not negligent; but elsewhere in its opinion seems to have adopted a variant of the ordinarily discredited "but for" theory, by suggesting that had claimant driver stopped, at some point not designated, perhaps at the railroad crossing, he would have observed the existing intersection beyond. Having found that the State's placement of the stop sign some 196 feet away from the intersection, in noncompliance with the regulation, made "no difference", the trial court has summarily dismissed the State's apparent tardiness in restoring the huge pavement markings, once deemed essential, as "immaterial"; this conclusion being echoed by the finding of the majority of this court that the State's warning and failure to repaint it were alike "immaterial"; although both reason and precedent seem to be to the contrary. (See, e.g., *Eastman* v. *State of New York*, 303 N. Y. 691; *Nuss* v. *State of New York*, 301 N. Y. 768.) The record supports the trial court's finding of the driver's negligence, in one respect or another, but it seems clear that the State's negligence was also a proximate cause of the accident, rendering the State liable to the passengers. Here, to the unfamiliar eye, the road looked as if it continued straight on past the tracks and, in fact, as if the double lines in the middle of Route 79 merged right into the double lines which continued south on and down Route 12. It

is entirely conceivable and reasonable that an unfamiliar driver could mistakenly judge that the road coming in from the right was the intersecting road and that he was on the main, right-of-way road. The prior route signs encountered back from the tracks do not make this clear and the sign with the two arrows actually indicates Route 79 as a through road and Route 12 as a side road. So, it was incumbent upon the State adequately to warn that such was not the situation at all. This it undertook to do by placing a standard stop sign in front of the tracks — although Route 79 continued well beyond the tracks before it intersected Route 12. The stop sign could be taken to apply to the tracks, as a double warning, with no indication that there was not clear going beyond the tracks. There is ample evidence that this was a deceptive and dangerous condition and that it was remedied by the painting of a stop bar and the word "STOP", out at the *actual* intersection. Had that warning been there, this accident might well have been avoided. There is negligence to be found in not replacing this warning after the resurfacing had been completed three weeks previously. There is also negligence to be found in the fact that the stop sign placement at the time of the accident, aside from its positioning in front of the tracks, was nowhere near the acceptable place where the actual stop was desired. These two negligent factors, taken in light of the deceptive appearance of the intersection as one approached coming south on Route 79, seem clearly to have been proximate causes of the accident. The dismissal of the operator's claim should be affirmed and the dismissals of the passengers' claims should be reversed.