Niagara Frontier Transit System, Inc., Appellant, v State of New York, Respondent. (Claim No. 57379.)

Fourth Department, April 7, 1977

*Runals, Broderick, Shoemaker, Richert, Berrigan & Doherty (Patrick Berrigan* of counsel), for appellant.

*Brown, Maloney, Gallup, Roach & Busteed, P. C. (Edmund Brown* of counsel), for respondent.

Moule, J. P. Claimant appeals from a judgment of the Court of Claims dismissing its claim against the State after

trial. The claim seeks indemnification from the State, an alleged joint tort-feasor, for payment made by claimant in settling a personal injury action arising out of an accident involving one of its buses.

In the spring of 1969 work was commenced on the Church Street Arterial located in downtown Buffalo pursuant to the State Arterial Highway Improvement Program under which the State of New York had primary control. The arterial runs in an east-west direction, with a 37-foot-wide roadway (two lanes) in each direction, separated by a four-foot raised mall. The design and plans for the highway provided for the maintenance of traffic during construction and they were submitted to the local municipality for suggestions and approval.

At the same time that the arterial was under construction, work was being done on the Erie County Office Building along the north side of Church Street, between Pearl and Franklin Streets. There were periods when the north side of the arterial was obstructed due to the necessity of placing heavy equipment there to erect a stone facade for the building.

As a result of this construction traffic complications ensued and it became necessary to establish plans for the maintenance of vehicular and bus traffic in the area. A decision was reached by the State of New York and the City of Buffalo to maintain two-way traffic along Church Street at all times. Commencing October 16, 1969 the south side of Church Street, between Pearl and Franklin Streets,[1] became a terminal area for some of claimant's buses. The plan which was instituted prohibited any vehicular traffic to use the south side of Church Street (the two eastbound lanes). All buses running south on Pearl Street would turn right, onto the south side of the Church Street Arterial, and proceed westbound on what would normally be the two eastbound lanes. At the same time the north side of Church Street, normally the two westbound lanes, would accommodate two-way vehicular traffic. The buses would then turn right onto Franklin Street and proceed in a northerly direction. This system necessitated loading and unloading passengers from the street side of the bus rather than the curb area.

At the center of the arterial the four-foot raised mall provided protection to the passengers from the two-way traffic

---

1. Pearl and Franklin Streets both intersect Church Street. Pearl Street is a one-way street running in a southerly direction (downtown). Franklin Street is a one-way street running in a northerly direction.

on the north side of Church Street. Additionally, three large wooden barricades were placed on the southeast corner of Church and Franklin Streets to prevent vehicles from entering the lanes from which the buses would be exiting.

On October 22, 1969 Maureen Stewart was injured when a bus ran over her foot as she stood near the center mall on the south side of Church Street, between Pearl and Franklin Streets. She and her mother brought a personal injury action against claimant and others. The action was settled when the girl and her mother accepted an offer of $45,000 made by claimant who then sought indemnification by the State for the amount paid.

The Court of Claims, in applying the doctrine of limited governmental immunity as set forth in *Weiss v Fote* (7 NY2d 579), found that claimant failed to establish any actionable negligence by the State of New York. We agree with this determination.

In *Weiss v Fote (supra)* the Court of Appeals discussed at length those situations in which the State and other municipalities could be held liable in tort. The court stated that it is proper and necessary to hold these bodies liable for injuries arising out of the day-by-day operations of government; e.g., injury resulting from the negligent maintenance of a highway, but to submit to a jury the reasonableness of the lawfully authorized deliberations of executive bodies presents a different question (7 NY2d, at p 585).

In this vein, the court stated (p 588): "In the area of highway safety, at least, it has long been the settled view, and an eminently justifiable one, that courts should not be permitted to review determinations of governmental planning bodies under the guise of allowing them to be challenged in negligence suits; something more than a mere choice between conflicting opinions of experts is required before the State or one of its subdivisions may be charged with a failure to discharge its duty to plan highways for the safety of the traveling public".

However, where it can be shown that a duly executed highway safety plan "either was evolved without adequate study or lacked reasonable basis", liability may attach where injury arises out of the operation of such a plan (7 NY2d, at p 589).

Claimant contends that the State's plan to place the bus terminal on the south side of Church Street was made without

adequate study and lacked reasonable basis and that, therefore, the State is not excepted from liability under the doctrine of *Weiss v Fote.*

The record shows that claimant participated in the study made of the situation before the plan was put in operation by having its representatives attend various meetings during which time the substance of these plans was discussed. There was testimony that the assistant civil engineer for the State, who was involved in the design and construction of the Church Street Arterial, worked closely with claimant's vice-president in planning the rerouting of buses. Claimant submitted plans showing all bus routes and numbers. The State undertook the task of determining existing bus stops and making surveys of the volume of bus and other vehicular traffic within the proposed construction project. Although no data was compiled by the State regarding the type, age or number of passengers traveling on a particular bus run, claimant neither volunteered such information nor expressed concern over how those factors would affect the plan. As late as October 10, 1069, six days before the plan was implemented, claimant participated in a meeting in which the plan was discussed and did not at any time make any objection to the plan adopted. We believe that an adequate study was made.

Claimant further asserts that the plan lacked a reasonable basis in that on and after October 16, 1969, the date the plan was implemented, there was no longer heavy equipment on the north side of the Church Street Arterial and thus no need to maintain the terminal on the south side of the arterial.

As is stated in *Weiss,* the State is under a continuing duty to review its plan in light of its actual operation *(Weiss v Fote,* 7 NY2d 579, 587, *supra;* see, also, *Eastman v State of New York,* 303 NY 691). Although the statement of this rule presupposes that the plan is in operation, it need not necessarily be so limited. The rule could logically be extended to apply to review of plans prior to their being effectuated, as is the situation in the instant case.

Here, in a meeting held on April 25, 1969 attended by all parties including claimant, representatives of the company constructing the Erie County Office Building stated that they would need to occupy a portion of the north side of the Church Street Arterial for approximately a three-month period. However, as it was still necessary to use this area as late

as October 1, 1969, on October 10, 1969 another meeting was held in which claimant was a participant. At that meeting the parties re-evaluated the prospective plan to use the south side of Church Street as a bus terminal beginning on October 16, 1969 and claimant voiced no objection to the implementation of the plan as originally devised.

Although on October 16, 1969 there was no longer heavy construction equipment on the north side of Church Street, inasmuch as the equipment which had occupied that area remained there months longer than originally planned and it was reasonable to believe that it might be necessary to use equipment in that area again, the State did not act unreasonably in maintaining its plan to set the bus terminal on the south side of the arterial. Additionally, it is clear that claimant voiced no objection at the October 10 meeting with respect to the implementation of the plan as devised and should not now be allowed to do so in hindsight.

Claimant has failed to show that the plan to maintain vehicular and bus traffic on the Church Street Arterial was either evolved without adequate study or lacked a reasonale basis and, therefore, the wisdom of such plan may not be questioned nor may this exercise of governmental discretion give rise to liability in negligence *(Weiss v Fote,* 7 NY2d 579, *supra;* see, also, *Barnard v State of New York,* 52 AD2d 700, 701; *Matter of Karras v State of New York,* 48 AD2d 748; *Jones v State of New York,* 40 AD2d 227, 229).

Claimant further contends that even assuming that the plan in question was proper, the State was negligent in that the actual effectuation of the plan represented a departure from its provisions. In particular, claimant alleges that the State failed to provide a hazard-free walkway and an adequate barricade to protect and separate pedestrians either loading or unloading from buses as set forth in the plan's provisions.

The four-foot center mall which separated the eastbound and westbound traffic along Church Street was completed before the plan calling for the utilization of the south side of Church Street as a bus terminal was implemented. We agree with the findings of the Court of Claims that this center mall provided an adequate barricade to protect the pedestrians loading or unloading from buses. Additionally, this center mall, along with the barricades placed at the southeast corner of Church and Franklin Streets to prevent vehicles from entering the eastbound lanes from which the buses were

exiting, provided pedestrians with a hazard-free walkway. The record supports a conclusion that the State substantially complied with the safety provisions of the plan.

Since claimant has failed to show an inadequate study in the preparation of the plan, an unreasonable basis for it, or a deviation from the plan, it is not entitled to recover by way of indemnification against the State for the amount it paid in settlement.

The judgment of the Court of Claims should be affirmed.

CARDAMONE, SIMONS, DILLON and WITMER, JJ., concur.

Judgment unanimously affirmed, without costs.