RICHARD M. ATKINSON et al., Appellants, v COUNTY OF ONEIDA, Respondent.

Fourth Department, November 13, 1980

APPEARANCES OF COUNSEL

*Tenney, Smith & Scott (Terry D. Smith* of counsel), for appellants.

*Gorman, Waszkiewicz & Gorman (Bartle J. Gorman* of counsel), for respondent.

**OPINION OF THE COURT**

WITMER, J.

Plaintiffs appeal from a judgment dismissing their complaint against the County of Oneida in a personal injury action for damages arising from a highway intersection accident. The appeal presents questions as to whether as a matter of law a county may be held liable in negligence for

failing to review and re-evaluate its original plan for traffic control at an intersection of two of its roads, whether on this record an issue of fact exists regarding the county's alleged breach of such duty, and whether there is an issue of fact for the jury with respect to the proximate cause of the county's negligence in relation to plaintiff's injuries. We reach affirmative answers to each of these questions.

On September 2, 1977 in the Town of Camden, Oneida County at about 1:45 P.M. on a clear, dry day plaintiff Richard M. Atkinson was injured in a two-car motor vehicle accident at the intersection of two county roads, to wit, Preston Hill Road, which runs generally north and south, and Hillsboro Road, which runs generally east and west. He was driving alone southerly on Preston Hill Road and collided with a vehicle driven by Beverly Wilson easterly on Hillsboro Road. The view across the northwest corner of that intersection of southbound and eastbound drivers is severely limited because of physical obstructions, the surrounding terrain and a dip in Hillsboro Road west of the intersection. There were stop signs on Hillsboro Road for both eastbound and westbound traffic through the intersection. There was no traffic control at the intersection for traffic on Preston Hill Road, but both north and south thereof there were "plus (+) intersection" signs indicating the intersection. There was no posted speed limit on either road in the area of this intersection.

After the accident neither driver had any recollection of the collision; but plaintiff testified that he had been traveling within legal limits and Mrs. Willson testified that she knew that there was a stop sign for her at the intersection, that she stopped, looked to her left, saw no vehicle approaching, and proceeded into the intersection.

The record shows that both roads had been owned and maintained by the county for over 40 years. In 1969 the county highway department conducted a road-sign survey for the Town of Camden and erected signs at all intersections in accordance with the 1958 standards promulgated by the New York State Department of Transportation with respect to traffic signs (1958 Manual of Uniform Traffic Control Devices; see 15 NYCRR 2330.27). In addition to the

stop signs on Hillsboro Road at this intersection, "Stop Ahead" signs were erected some distance back from the intersection. Following this 1969 survey and action, accident histories were kept for all county roads and reviewed annually, and all signs were inspected twice annually.

The county's senior civil service engineer testified that it was the county's practice to place a flashing red signal light at an intersection if five or more accidents per year occurred there; but no such signal was placed at any point on Preston Hill Road. The county never considered installing a four-way stop sign, a flashing red light or flashing lights of any sort at this intersection, nor a traffic control signal on Preston Hill Road; nor did the county consider erecting speed signs on Preston Hill Road north or south of the intersection.

To save court time, it was stipulated that plaintiffs had witnesses available who, if called, would testify that they had observed drivers disregard the stop signs at this intersection, resulting in near accidents; that qualified highway engineers, if called, would testify that stop signs or flashing red lights should have been erected on Preston Hill Road at this intersection or, at the least, a 30 mile per hour stated speed sign for southbound traffic should have been erected there; and that 20 days after the accident of September 2, 1977 the intersection warning signs on Preston Hill Road were moved further from the intersection, northerly and southerly, and a 30 mile per hour stated speed sign was erected on Preston Hill Road near this intersection, because of "accident history". That history was that between the 1969 survey and the date of plaintiff's accident, seven accidents at this intersection were reported, in which there were eight personal injuries and one fatality.

"It has long been established that a governmental body, be it the State, a county or a municipality, is under non-delegable duty to maintain its roads and highways in a reasonably safe condition, and that liability will flow for injuries resulting from a breach of the duty *(Neddo v State of New York*, 194 Misc 379, affd 275 App Div 492, affd 300 NY 533)" *(Lopes v Rostad*, 45 NY2d 617, 623; see, also, *Harris v Village of East Hills*, 41 NY2d 446). Al-

though the State (or county) "is not an insurer of the safety of persons using its highways *(Boyce Motor Lines v State of New York*, 280 App Div 693, 696, affd 306 NY 801), it does have a duty to construct and maintain its highways in a reasonably safe condition *(Canepa v State of New York*, 306 NY 272; *Lyle v State of New York*, 44 AD2d 239) which includes giving adequate warning, by signs or otherwise, of dangerous conditions in the highway *(McDevitt v State of New York*, 1 NY2d 540, 544; *Tamm v State of New York*, 29 AD2d 601, affd 26 NY2d 719)" *(Beardsley v State of New York*, 57 AD2d 1061).

The county "is charged with the duty of warning, guiding and regulating traffic, as it deems necessary, by placing and maintaining traffic control devices conforming to the State manual and specifications (Vehicle and Traffic Law, § 1682)" *(Woodcock v County of Niagara*, 52 AD2d 1087). Breach of that duty, if the proximate cause of injury, may give rise to liability on the part of the county (see *Bauer v Sharkey*, 16 NY2d 631; *Bodner v Steinhardt*, 71 AD2d 702; *Mente v County of Tioga*, 18 AD2d 863).

The scope of the county's liability, however, is circumscribed by the doctrine of limited governmental immunity as recognized and stated in *Weiss v Fote* (7 NY2d 579, 585-586): "It is proper and necessary to hold municipalities and the State liable for injuries arising out of the day-to-day operations of government—for instance, the garden variety injury resulting from the negligent maintenance of a highway—but to submit to a jury the reasonableness of the lawfully authorized deliberations of executive bodies presents a different question * * * To accept a jury's verdict as to the reasonableness and safety of a plan of governmental services and prefer it over the judgment of the governmental body which originally considered and passed on the matter would be to obstruct normal governmental operations and to place in inexpert hands what the Legislature has seen fit to entrust to experts". Thus, "liability for injury arising out of the operation of a duly executed highway safety plan may only be predicated on proof that the plan either was evolved without adequate study or lacked reasonable basis" *(Weiss v Fote*, 7 NY2d 579, 589, *supra*).

Absent such proof, "the wisdom of such plan may not be questioned nor may this exercise of governmental discretion give rise to liability in negligence" *(Niagara Frontier Tr. System v State of New York*, 57 AD2d 59, 63; see, also, *Tomassi v Town of Union*, 46 NY2d 91).

Plaintiffs do not question the propriety of the county's actions in 1969 when it surveyed its roads and erected signs thereon. Instead, plaintiffs contend that the county failed in its duty in subsequent years to review its plan and actions of 1969. Plaintiffs are correct in asserting that the county "was under a continuing duty to review its plan in the light of its actual operation" *(Weiss v Fote*, 7 NY2d 579, 587, *supra; Eastman v State of New York*, 303 NY 691; *Niagara Frontier Tr. System v State of New York*, 57 AD2d 59, 62, *supra)*. Evidence that physical conditions at the intersection had changed, that the 1969 "signing" was proving inadequate, and that an inordinate number of accidents has occurred at the intersection are factually sufficient to demonstrate a violation by the county of its "continuing obligation to maintain the safety of the highways" *(Weiss v Fote, supra*, p 587).

In light of the county's continuing obligation and "[v]iewing the evidence, as we must, in a light most favorable to plaintiffs *(Commisso v Meeker*, 8 NY2d 109)" *(Tomassi v Town of Union*, 46 NY2d 91, 97), it is clear that a question of fact exists as to whether the county fulfilled its duty in this case.

If the county is found to have breached that duty, it then will be a question of fact for a jury whether that breach was a proximate cause of plaintiff's accident and the resulting injuries *(Leone v City of Utica*, 66 AD2d 463, 467, affd 49 NY2d 811; *Meizlik v Benderson Dev. Co.*, 51 AD2d 676, 677).

The judgment should, therefore, be reversed and new trial granted.

DILLON, P.J., SCHNEPP, CALLAHAN and DOERR, JJ. concur.

Judgment unanimously reversed, on the law and facts, and a new trial granted.