SARAH UFNAL, as Administratrix of the Estate of JOSEPH
H. UFNAL, Deceased, Appellant, v CATTARAUGUS
COUNTY, Respondent.

Fourth Department, May 25, 1983

**APPEARANCES OF COUNSEL**

*John J. Goodell* for appellant.

*Shane & Franz (J. Michael Shane* of counsel), for respondent.

**OPINION OF THE COURT**

HANCOCK, JR., J.

On November 5, 1978 a motorcycle operated by Joseph
Ufnal collided with a deer on Mosher Hollow Road, County
Road 5, in the County of Cattaraugus. Joseph Ufnal died
from the injuries he sustained and plaintiff, his adminis-
tratrix, has sued the county, alleging that it was negligent
in failing to post a deer crossing sign in the area in
accordance with the Manual of Uniform Traffic Control
Devices (17 NYCRR 234.4).[1] At the conclusion of all of the

---

**1.** Pertinent parts of 17 NYCRR 234.4 follow:

"(a) (1) This sign is intended for use to warn traffic where deer cross a highway at a
reasonably well-defined location and the crossing constitutes a traffic hazard. To be
effective this sign *should be related* to a specific problem and erected in proximity to the
crossing.

"(2) It *may* also be used to warn traffic where deer randomly cross a highway at
numerous locations within a zone, which may be up to several miles long, rather than at

evidence, the trial court dismissed the complaint. We affirm.

It is undisputed that there was a heavy deer population throughout Cattaraugus County and that large groups of deer were seen frequently in the Mosher Hollow Road area. There were deer signs posted on only two of the county highways and none on Mosher Hollow Road. Plaintiff testified that after the accident she found evidence of a deer trail near the spot where the deer struck by Ufnal must have crossed. A witness, John Merritt, stated that deer often crossed the road at that point and that he too had found tracks near the scene after the occurrence. Merritt, who lived on Mosher Hollow Road eight tenths of a mile from where the accident happened, said that on one occasion prior to the accident, while conversing in front of his house with Edwin Stevens of the county highway department, he asked Stevens about the possibility of putting up some deer signs.

Edwin Stevens was the supervisor of signs for the Cattaraugus County Highway Department and as such responsible for their posting and maintenance. He had no record of Merritt's inquiry about deer signs and no recollection of the conversation. Determinations as to deer signs were made by Stevens in consultation with the county superintendent of highways on the basis of the criteria in the Manual of Uniform Traffic Control Devices (see n 1, *supra*) after Stevens had investigated the complaint and the need for the sign. Describing the practice he followed, Stevens said that he would primarily "go by people complaining, calling in, sometimes writing letters, and then [he] would go to the site, examine it for evidence of a well defined crossing and then * * * [make a determination] on the basis of those facts." In reaching a decision he also considered county Sheriff's records of deer-related accidents. Any complaint concerning deer crossings would be kept in a file

---

one or more reasonably well-defined locations. When so used it shall be erected in advance of the beginning of the zone and at intervals of not greater than one mile within the zone. If the zone is one-half mile or less in length, a sign will be required only at the beginning of the zone * * *

"(d) (1) This sign *shall* be used *only* after a careful determination has identified the locations of deer crossings and evidence, such as vehicle-deer accidents, indicates that a warning to motorists is necessary." (Emphasis added.)

pertaining to the particular county highway involved. There was no record in the highway department of any such complaint for Mosher Hollow Road, and there was no record in the Sheriff's office, in the highway committee of the county legislature or elsewhere of any problem or accident involving deer on Mosher Hollow Road.

While a municipality may be held liable for ordinary negligence in its day-to-day operations, as a general rule it enjoys a limited immunity with respect to injuries arising from the exercise of judgment and discretion in governmental decisions of its officers and employees (see *Weiss v Fote,* 7 NY2d 579;[2] *Urquhart v City of Ogdensburg,* 91 NY 67; *Atkinson v County of Oneida,* 77 AD2d 257, 260, 261; *Southworth v State of New York,* 62 AD2d 731, 740, affd 47 NY2d 874). The rationale for the rule is that "[c]ourts and juries are not to say [that a municipality] shall be punished in damages for not giving to the public more complete protection; for that would be to take the administration of municipal affairs out of the hands to which it has been intrusted by law" (*Urquhart v City of Ogdensburg, supra,* p 71, quoting *City of Lansing v Toolan,* 37 Mich 152). For this reason, the *Weiss* court stated, responsibility for an injury arising from an allegedly deficient highway safety plan "may only be predicated on proof that the plan either was evolved without adequate study or lacked reasonable basis" (*Weiss v Fote, supra,* p 589; see, e.g., *Zalewski v State of New York,* 53 AD2d 781); and "[a]bsent such proof, 'the wisdom of such plan may not be questioned nor may this exercise of governmental discretion give rise to liability in negligence' (*Niagara Frontier Tr. System v State of New York,* 57 AD2d 59, 63; see, also, *Tomassi v Town of Union,* 46 NY2d 91)" (*Atkinson v County of Oneida, supra,* p 261). Courts have applied the *Weiss* rule to discretionary decisions such as adopting a plan for rerouting traffic while

---

**2.** *Weiss v Fote* (7 NY2d 579) held that the immunity long enjoyed by the State and its subdivisions with respect to the exercise of their discretionary planning functions (see *Urquhart v City of Ogdensburg,* 91 NY 67) was distinct from the immunity based on the sovereign character of the State or municipality and thus was unaffected by the waiver of sovereign immunity in section 8 of the Court of Claims Act. In *Weiss* the court applied the limited "planning function" immunity to the determination of the City of Buffalo to time a traffic intersection signal light to permit a four-second "clearance interval".

repaving a portion of Interstate 81 (see *Schuls v State of New York,* 92 AD2d 721), placing a temporary bus stop as part of a plan to maintain vehicular traffic during road construction (*Niagara Frontier Tr. System v State of New York, supra*) and timing and installing a traffic intersection signal light (see *Weiss v Fote, supra; Cimino v City of New York,* 54 AD2d 843, affd 43 NY2d 966). Conversely, liability under ordinary negligence principles has been imposed for "the garden variety injury resulting from the negligent maintenance of a highway" (*Weiss v Fote, supra,* p 585), such as failure properly to bank a curve, to maintain a safe surface on the road (see *Wingerter v State of New York,* 79 AD2d 817, affd 58 NY2d 848) or to repair a dangerously low shoulder (see *Retzel v State of New York,* 94 Misc 2d 562).[3]

Whether the claim here is one for the everyday sort of negligence for which a municipality may be held liable under the usual rules as, for example, for improper highway construction and maintenance (see *Atkinson v County of Oneida, supra,* p 260), is the question. We hold that the posting of a deer sign is a discretionary act akin to the placement of a traffic light at an urban intersection (see *Cimino v City of New York, supra*) for which a municipality has limited immunity under *Weiss v Fote* (*supra,* p 584). Absent a showing that the county's failure to post a deer crossing sign was without any reasonable basis, the county

---

**3.** We have found no consistent pattern in the application of the *Weiss v Fote* (7 NY2d 579) rule in cases concerning signs, traffic signals, and other traffic control devices. Compare, for example, decisions holding the *Weiss* limited immunity rule applicable in cases involving posting stop signs (*Atkinson v County of Oneida,* 77 AD2d 257), placing signs warning of a curve ahead (*Lyle v State of New York,* 44 AD2d 239, affd *sub nom. Murray v State of New York,* 38 NY2d 782) or of other hazard (*Proctor v State of New York,* 67 AD2d 1051), establishing a speed limit (*Stuart-Bullock v State of New York,* 38 AD2d 626, affd 33 NY2d 418), installing a traffic light (*Cimino v City of New York,* 54 AD2d 843, affd 43 NY2d 966), and erecting a median barrier (*Stuart-Bullock v State of New York, supra*) with cases making no reference to *Weiss* in considering governmental liability for posting stop signs (*Tamm v State of New York,* 29 AD2d 601, affd 26 NY2d 719), placing signs warning of a curve (*Nack v Town of Ghent,* 88 AD2d 1007), of a road that is slippery when wet (*Fisher v State of New York,* 78 AD2d 952) or of other hazard (*Beardsley v State of New York,* 57 AD2d 1061), establishing a speed limit (*Brock v State of New York,* 58 AD2d 715), and erecting a median barrier (*Gunn v Good Luck Truck Rental,* 85 AD2d 567). A number of these latter cases rely on *Hicks v State of New York* (4 NY2d 1), *McDevitt v State of New York* (1 NY2d 540) and *Canepa v State of New York* (306 NY 272), all cases concerning signs decided prior to and appearing to be inconsistent with *Weiss.* While we make no effort to reconcile the cases, we have no difficulty in holding that *Weiss* should be applied here.

would not be responsible. The question is not whether, in the jury's judgment, in view of the evidence of large numbers of deer in the Mosher Hollow Road area, the county officers in the exercise of reasonable care should have posted deer crossing signs and were negligent in not doing so. Rather, the question is whether, despite the absence of written complaints or evidence of vehicle-deer accidents in the vicinity, there was no reasonable basis for the county's exercise of discretion in following its established procedures and not examining the area or posting a sign. There was no evidence here which would support such a finding and therefore no question to submit to the jury.

We observe that unlike its public highways which a municipality controls and for which it is responsible, deer in their natural state are wild animals which it cannot control. Thus, it seems reasonable to conclude that a municipality should be and is "duty bound to construct and maintain its highways in a reasonably safe condition * * * and to warn users of its highways of existing hazards" (*Wingerter v State of New York*, 79 AD2d, at p 818), but that there is no comparable legal duty to protect highway users from or to warn them of the dangers of collision with wild deer (see *Masser v New York State Thruway Auth.*, 34 Misc 2d 195; *Morrison v State of New York*, 204 Misc 224; 27 NY Jur, Highways, Streets, and Bridges, § 458).

Nothing in the regulations pertaining to uniform traffic control devices (17 NYCRR 234.4) (see n 1, *supra*) points to a contrary conclusion. The language as to the posting of deer signs is permissive, not mandatory (see *Massar v New York State Thruway Auth., supra,* p 198), and the regulation expressly provides that the sign *"shall be used only* after a careful determination has identified the locations of deer crossings and evidence, such as vehicle-deer accidents, indicates that a warning to motorists is necessary. Consideration should be given to preventing the crossings, where feasible" (17 NYCRR 234.4 [d] [1]; emphasis added). Indeed, the required "careful determination * * * that a warning to motorists is necessary" is the very sort of discretionary governmental decision to which the rule in *Weiss (supra)* applies.

The order should be affirmed.

DILLON, P. J., CALLAHAN, DENMAN and GREEN, JJ., concur.

Order unanimously affirmed, without costs.