OPINION OF THE COURT
Jasen, J.
This appeal raises the issue whether a municipality may be held liable for injuries suffered by an infant struck by an automobile while attempting to negotiate a school crossing where the municipality’s police department, having voluntarily assumed a duty to supervise school crossings — an assumption upon which the infant’s parent relied — negligently omitted to station a guard at one of the designated crossings.
On November 14, 1967, Darryle Davis, a 6-Vi-year-old in *193 fant, was struck by a taxicab, the impact of which resulted in the infliction of severe brain damage to the infant. At the time of the injury, the infant plaintiff was a first-grade student at Public School 191, located on Park Place between Ralph and Buffalo Avenues in Brooklyn. Although he resided on Park Place, only one block away from the school, the infant plaintiff was required to cross Ralph Avenue to attend school.
Prior to the occurrence of the accident resulting in the infant’s injury, a civilian school crossing guard had been assigned regularly to cover the intersection of Park Place and Ralph Avenue, a busy two-way street. For the first two weeks of class, a period throughout which the infant’s mother accompanied her son to and from school, a crossing guard had been stationed at the intersection of Park Place and Ralph Avenue. Having witnessed the daily presence of a crossing guard at this intersection, the infant’s mother, who accepted employment two weeks after her son started class, felt confident that she need not arrange for someone to provide a similar service for her child.
Tragically, however, on the day in question no crossing guard was stationed at the intersection of Park Place and Ralph Avenue. The regularly assigned crossing guard, having felt ill that day, notified the 77th precinct at 7:30 a.m that she would not be able to report for duty. Police department regulations provided that a crossing guard unable to report for duty "notify the [police precinct] desk officer sufficiently in advance so that other arrangements [could] be made for covering the crossing.” (Rules and Regulations of New York City Police Dept, ch 23, § 12.1.) Patrolmen and superior officers were also required to notify the desk officer of the absence of a crossing guard at a covered intersection. Upon receipt of this information, the desk officer was required to "assign a patrolman to cover the crossing.” (Id., ch 23, § 12.3.) Departmental regulations provided, however, that if all school crossings could not be covered, those intersections considered most dangerous were to be covered. (Id., ch 15, § 34.1.) Significantly, where more urgent police duty mandated a patrolman’s presence elsewhere, department regulations required him to notify the school principal so that the latter could make arrangements to provide for the safety of the children. (Id., ch 15, § 35.0.)
Upon receiving notification of the crossing guard’s unavail *194 ability for duty, the police department neither assigned a patrolman to substitute for the crossing guard nor notified the school principal of the absence of a crossing guard at the Park Place and Ralph Avenue intersection. It was shortly after 11:45 a.m., while the infant plaintiff was returning home from school, that he was struck by a taxicab while attempting to cross this intersection.
The infant’s mother, as natural guardian, commenced this action against New York City, Lilly Transportation Corp., the owner of the taxicab, and Meyer Goldberg, the operator of the vehicle, seeking damages for the personal injuries suffered by the infant. She also sought, in a derivative cause of action, damages for loss of the infant’s services and medical expenses. At trial, the action was discontinued against Goldberg.
The jury returned a verdict against Lilly and New York City, apportioning the liability between them in the ratio of 25% against Lilly and 75% against the city. On appeal, the Appellate Division affirmed the judgment of liability, but ordered a new trial on the issue of damages, holding that the award had been tainted by plaintiffs’ improper use of medical textbooks at trial.
On retrial of the issue of damages, the jury awarded the infant $500,000 and his mother $270,000. On appeal, the Appellate Division, holding the award to the infant’s mother excessive, ordered a new trial on the issue of damages unless plaintiff agreed to accept a reduction to $125,000. Plaintiff having so stipulated, the Appellate Division affirmed the judgment of the trial court.
On appeal to this court, the City of New York contends that a municipality acting in its governmental capacity to protect the public from external hazards cannot be held liable in damages for its failure to furnish adequate protection. We hold that a municipality whose police department voluntarily assumes a duty to supervise school crossings — the assumption of that duty having been relied upon by parents of school children — may be held liable for its negligent omission to provide a guard at a designated crossing or to notify the school principal or take other appropriate action to safeguard the children.
By its waiver of governmental immunity (Court of Claims Act, § 12-a [L 1929, ch 467, § 1], now § 8), the State assumed liability for its conduct and consented to have such liability determined in accordance with the same rules of law *195 applicable to individuals and corporations. As a concomitant of the State’s waiver of immunity, the governmental subdivisions of the State — its counties, cities, towns and villages— formerly sheltered under the protective cloak of the State’s immunity (Murtha v New York Homeopathic Med. Coll. & Flower Hosp., 228 NY 183, 185), also became "answerable equally with individuals and private corporations for wrongs of officers and employees” (Bernardine v City of New York; 294 NY 361, 365; Motyka v City of Amsterdam, 15 NY2d 134, 138). As in the case of an individual or private corporation, however, a municipality’s liability must be premised upon the existence and breach of a duty flowing from the municipality to the plaintiff. (Motyka v City of Amsterdam, 15 NY2d 134, supra.) Absent the existence and breach of such a duty, the abrogation of governmental immunity, in itself, affords little aid to a plaintiff seeking to cast a municipality in damages.
Moreover, to sustain liability against a municipality, the duty breached must be more than a duty owing to the general public. There must exist a special relationship between the municipality and the plaintiff, resulting in the creation of "a duty to use due care for the benefit of particular persons or classes of persons” (Motyka v City of Amsterdam, 15 NY2d, at p 139, supra; Evers v Westerherg, 38 AD2d 751, affd 32 NY2d 684; see generally, 18 McQuillin, Municipal Corporations, p 126).
For example, as a general rule, a municipality’s duty to furnish water to protect its residents against damage caused by fire is a duty inuring to the benefit of the public at large, rather than to the individual members of the community. (Motyka v City of Amsterdam, 15 NY2d 134, 138, supra; Steitz v City of Beacon, 295 NY 51, 57; Moch Co. v Rensselaer Water Co., 247 NY 160, 165; La Duca v Town of Amherst, 53 AD2d 1011.) Similarly, a municipality cannot be held liable for failure to furnish adequate police protection. This duty, like the duty to provide protection against fire, flows only to the general public. (Riss v City of New York, 22 NY2d 579, 583; Bass v City of New York, 38 AD2d 407, 411, affd 32 NY2d 894; Zibbon v Town of Cheektowaga, 51 AD2d 448, 449, app dsmd 39 NY2d 1056; see, generally, Comment, Municipal Tort Liability for Failure to Provide Adequate Police Protection in New York State, 39 Albany L Rev 599; Police Protection— Governmental Liability, Ann., 46 ALR3d 1084.)
Where, however, a special relationship exists between a *196 municipality and a plaintiff creating a duty, albeit one normally inuring only to the benefit of the public at large, a municipality may be held liable for damages suffered as a consequence of its negligence. For example, a municipality possesses a special duty to provide police protection to an informer who collaborates with the police in the arrest and prosecution of a criminal. (Schuster v City of New York, 5 NY2d 75, 82-83.) Moreover, where a municipality assumes a duty to a particular person or class of persons, it must perform that duty in a nonnegligent manner, notwithstanding that absent its voluntary assumption of that duty, none would have otherwise existed. As Chief Judge Cardozo succinctly stated: "The hand once set to a task may not always be withdrawn with impunity though liability would fail if it had never been applied at all.” (Moch Co. v Rensselaer Water Co., 247 NY, at p 167, supra.)
It is within this analytical framework that the issue posed on this appeal must be resolved: that is whether the City of New York, through its police department, assumed a particular duty to a special class of persons, not generally true of police control of pedestrian or vehicle traffic, and whether having assumed that duty, the city negligently omitted its performance, resulting in the infliction of physical injury to a member of the benefited class.
In this regard, there is little question that the police department voluntarily assumed a particular duty to supervise school crossings. Its departmental rules and regulations expressly provided that a crossing guard unable to report for duty advise the precinct sufficiently in advance to permit the police to make other arrangements to cover the crossing. (Rules and Regulations of New York City Police Dept, ch 23, § 12.1.) Upon notification by a patrolman or superior officer of the absence of a crossing guard from his or her position, the precinct’s desk officer was required by departmental regulations to assign a patrolman to cover the crossing. (Id., ch 23, § 12.3.) Where more urgent police duty necessitated a patrolman’s presence elsewhere, he was required to notify the precinct and the school principal so that the latter could make arrangements to safeguard the children’s welfare. (Id., ch 15, § 35.0.)
Significantly, the duty assumed by the police department was a limited one: a duty intended to benefit a special class of persons — viz., children crossing designated intersections while *197 traveling to and from school at scheduled times. Thus, the duty assumed constituted more than a general duty to provide police protection to the public at large. Having witnessed the regular performance of this special duty for a two-week period, the plaintiff infant’s mother relied upon its continued performance. To borrow once more from Chief Judge Cardozo, "[i]f conduct has gone forward to such a stage that inaction would commonly result, not negatively merely in withholding a benefit, but positively or actively in working an injury, there exists a relation out of which arises a duty to go forward” (Moch Co. v Rensselaer Water Co., 247 NY, at p 167, supra). Application of this principle to the present case leads unmistakably to the conclusion that the police department, having assumed a duty to a special class of persons, and having gone forward with performance of that duty in the past, had an obligation to continue its performance. (Cf. Zibbon v Town of Cheektowaga, 51 AD2d 448, 453, supra; Bloom v City of New York, 78 Misc 2d 1077, 1078-1079.) Had the police department not assumed a duty to supervise school crossings, plaintiff infant’s mother would not have permitted her child to travel to and from school alone. The department’s failure to perform this duty placed the infant plaintiff in greater danger than he would have been had the duty not been assumed, since the infant’s mother would not have had reason to rely on the protection afforded her child and would have been required, in her absence, to arrange for someone to accompany her child to and from school.
As to whether the police department, having assumed this duty, negligently omitted its performance, the city contended at trial that sufficient patrolmen were not available to permit assignment of a patrolman to cover the intersection of Park Place and Ralph Avenue. The city placed great weight upon a departmental regulation mandating that "[w]hen all school crossings cannot be covered, those considered most dangerous shall be covered.” (Rules and Regulations of New York City Police Dept, ch 15, § 34.1.) It was the city’s contention that the intersection of Park Place and Ralph Avenue was not considered one of the most hazardous school crossings. Whether or not the police department negligently performed its duty to supervise school crossings is a question of fact properly left for determination by the jury. In returning a verdict against defendants, the jury resolved this question against the city.
In passing, we caution, however, that a municipality *198 cannot be held liable solely for its failure to provide adequate public services. The extent of public services afforded by a municipality is, as a practical matter, limited by the resources of the community. Deployment of these resources remains, as it must, a legislative-executive decision which must be made without the benefit of hindsight. (Riss v City of New York, 22 NY2d, at pp 581-582, supra; Bass v City of New York, 38 AD2d 407, 417, affd 32 NY2d 894, supra; Glick v City of New York, 53 AD2d 528.) Had the city established that a shortage of personnel precluded assignment of a patrolman to cover the intersection of Park Place and Ralph Avenue, notification of this contingency to the school principal or other appropriate action would have been sufficient to relieve the police department and New York City from liability for the failure to supervise the designated school crossing. To place a greater burden upon the police department would be unwarranted.
The order of the Appellate Division should be affirmed, with costs.
Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
Order affirmed.