Donald Browne et al., Respondents-Appellants, v Town of Hempstead, Appellant-Respondent.

Second Department, August 26, 1985

**APPEARANCES OF COUNSEL**

*Rivkin, Leff, Sherman & Radler* (*Edward J. Hart, Frank L. Amoroso* and *David P. Franks* of counsel), for appellant-respondent.

*Glenn L. Stephenson* for respondents-appellants.

**OPINION OF THE COURT**

Niehoff, J.

Plaintiffs have instituted this action against the Town of Hempstead to recover monetary damages for personal injuries and a corresponding loss of services which allegedly resulted from a dog bite sustained by plaintiff Donald Browne (hereinafter plaintiff) on July 18, 1981, in the parking lot of the Town of Hempstead Animal Shelter. The plaintiff had gone to the shelter that day in order to adopt a dog. When he arrived at the shelter parking lot, he saw two men attempting to load into a car a dog which one of them had just adopted. Although it is not clear from

the record before us just how the plaintiff managed to come close enough to the dog to be bitten, the dog, which was on a leash, bit the plaintiff on the nose.

The dog which bit the plaintiff had previously been picked up by the shelter as a stray after it had bitten another individual. Plaintiff alleges that the dog was first confined to the pound on July 13, 1981, but testimony from a pound employee suggests that the confinement may have commenced as early as July 11, 1981.

The complaint contains the following allegations of negligence:

"8. THE TOWN OF HEMPSTEAD had an obligation to keep a dog that had been returned as being vicious under surveillance for a reasonable period of time prior to allowing it to be readopted. THE TOWN OF HEMPSTEAD negligently failed to keep said dog under surveillance.

"9. THE TOWN OF HEMPSTEAD had an obligation to not adopt a dog that had been recently returned as being vicious. THE TOWN OF HEMPSTEAD negligently adopted said dog.

"10. THE TOWN OF HEMPSTEAD had an obligation to advise WILLIE WILLIAMS of the vicious propensities of the dog he was adopting and upon information and belief negligently failed to do so.

"11. As a direct result of THE TOWN OF HEMPSTEAD's failure to comply with its obligations for proper surveillance of a dog that had been returned as vicious, to adopt a dog that had been returned as vicious and to not advise the prospective owner of the vicious propensities of a dog, plaintiff DONALD BROWNE received substantial injury."

After issue was joined and depositions taken, plaintiffs moved for summary judgment upon the theory that under the doctrine of res ipsa loquitur there was no defense to their causes of action. As their brief in this court explains: "All the elements are presented for *res ipsa loquitur*. The plaintiff was 1) injured by 2) the dog that was in the exclusive control of the defendant (or in normal course of events should have been) and 3) had the vicious dog been destroyed as is the ordinary course of events dictated by the sanitary code [State Sanitary Code § 2.14 (e)], the injury would not have occurred." Defendant thereupon cross-moved for summary judgment, arguing that it had assumed no special duty of care toward the plaintiff and that in the absence of a special duty, it had no obligation to protect the plaintiff from injury.

By order dated October 31, 1983, Special Term denied both motions, stating: "it is clear that numerous questions of fact have arisen with respect to the conduct of both the plaintiff, Kenneth [sic] Browne, and the defendant." Thereafter, defendant moved for reargument, which was granted. However, upon reargument, the court adhered to its prior determination.

Both parties have appealed to this court, each claiming its entitlement to summary judgment. We conclude that the defendant is so entitled.

As noted above, plaintiffs' first claim of negligence is that defendant "had an obligation to keep [the] dog that had been returned as being vicious under surveillance for a reasonable period of time prior to allowing it to be readopted" and that the defendant "negligently failed to keep said dog under surveillance".

It is plaintiffs' contention that defendant is liable to the plaintiffs, as a matter of law, because it failed to comply with the State Sanitary Code § 2.14, which provides, in pertinent part:

"Reporting of suspected rabid animals and persons exposed to them * * *

"(e) Whenever, in accordance with this section, the health officer is notified of a person who has been bitten by or exposed to any animal suspected of having rabies, he shall, in a manner acceptable to him and at the owner's expense, cause the animal to be confined for 10 days, or he may, subject to the approval of the owner, if known, or if its ownership cannot readily be determined, cause the animal to be destroyed immediately and have the animal or the animal's head submitted to a laboratory approved by the State Commissioner of Health for examination" (10 NYCRR 2.14 [e]).

It is undisputed that the subject dog, which was not rabid, was not confined for 10 days as appears to be required by the code. But it does not necessarily follow, as plaintiffs assert, that just because defendant released the dog for adoption prior to the expiration of 10 days of confinement, defendant continued to have "control of the animal [at the time of the accident] practically as well as legally", thereby warranting the application of the doctrine of res ipsa loquitur and the granting of summary judgment in their favor. As defendant correctly points out, plaintiffs' case lacks an essential and purely legal element, i.e., a duty on the town's part to protect the plaintiff from attack by the dog by not releasing the animal prematurely to a nonparty (Willie Williams) while plaintiff was on the premises.

Liability will not be imposed upon a governmental body for injuries sustained by individuals where the statute or regulation alleged to have been violated by the governmental body defines a standard of care for the general welfare only (*see, O'Connor v City of New York,* 58 NY2d 184; *Sanchez v Village of Liberty,* 42 NY2d 876, *mot to amend remittitur granted* 44 NY2d 817). The *O'Connor* case, for example, involved a consolidated action against the City of New York, Con Edison, and the workers who had installed a new gas system in a building which was leveled by a gas explosion. The basis of the suit against the city was that a city inspector had issued the required authorization for the resumption of gas service without making a proper inspection of the gas system in violation of the Administrative Code of the City of New York. The Court of Appeals dismissed the complaint as against the city, holding that the regulation which was allegedly violated was intended to protect the general public in a broad sense, and not injured persons as individual plaintiffs (*O'Connor v City of New York, supra,* at p 190).

Municipal tort liability for violations of general statutory or regulatory obligations is limited to those situations where the plaintiff can establish that a special duty of care is owed to him. This is so even where the injury which results is a foreseeable one. For example, in *Crosby v Town of Bethlehem* (90 AD2d 134), it was held that the defendant town was not liable for its alleged failure to provide adequate protection in a case where an off-duty police officer failed to prevent an intoxicated person from operating a motorcycle which thereafter struck and killed a pedestrian. Similarly, in *Napolitano v County of Suffolk* (61 NY2d 863), the Court of Appeals implicitly rejected a theory of liability which would have held the county liable where it had actual knowledge of a dangerous condition and failed to take responsible safety measures. Notably, the special duty rule also applies notwithstanding the fact that the defendant had been placed on notice by prior similar injuries (*see, Weiner v Metropolitan Transp. Auth.,* 55 NY2d 175).

One way in which a special duty can arise is by a municipality assuming an obligation to protect a specific class of persons from a specific danger, which protection is relied upon by members of that class. This was the situation in the case of *Florence v Goldberg* (44 NY2d 189), wherein the municipality was held liable for injuries to a child who had been struck by a taxicab due to its failure to provide a crossing guard in violation of the applicable police department regulations. Municipal liability can also occur when there is a direct relationship between the plaintiff and the governmental body, as where the government

assumes an obligation to protect a specific individual from a specific danger (see, *De Long v County of Erie,* 60 NY2d 296; *Smullen v City of New York,* 28 NY2d 66; *Zibbon v Town of Cheektowaga,* 51 AD2d 448, *appeal dismissed* 39 NY2d 1056). In those cases, liability has been imposed based on the failure to perform an assumed obligation where the municipalities' assurances of protection actively worked an injury upon an individual who had relied upon them. In *De Long v County of Erie (supra),* for example, the plaintiff's decedent was murdered by an intruder after she had dialed 911 and was advised to remain in her home and to await a police rescue.

What is common to all of the above cases is that there was a relationship between the municipality and the class or the individual involved, as well as an element of reliance by that class or individual upon the promised governmental action or protection.

Here, the section of the State Sanitary Code upon which plaintiffs rely is a general public health regulation designed to prevent the spread of rabies among animals and to protect the public generally against exposure to rabies (see, 10 NYCRR 2.14). It contains no language suggesting that its protection was intended to extend to a specific class of persons. Therefore, if plaintiffs' claim under this regulation is to succeed, they must establish a special duty, e.g., through a past relationship with the defendant. In addition, since the town's cross motion for summary judgment raised the special duty issue, it placed a burden upon the plaintiffs to prove such a duty in order to defeat the cross motion (see, *Garrett v Town of Greece,* 78 AD2d 773, *affd* 55 NY2d 774, on opn at App Div). In the *Garrett* case (*supra*), plaintiff had attempted to impose liability for a hotel fire upon the town by alleging that it (1) employed inexperienced and incompetent persons in its building permit department, and (2) failed to inspect the building where the fire had occurred. However, summary judgment was granted in favor of the municipal defendant since the plaintiff "alleged no more than a violation by the town of a general duty owed to the public at large" (*Garrett v Town of Greece,* 78 AD2d 773, 774, *supra*).

A reading of the plaintiffs' papers in opposition to defendant's cross motion for summary judgment in the instant case and on their motion for leave to reargue shows that they attempted to rely exclusively upon the doctrine of res ipsa loquitur, and that they never addressed the special duty issue. Clearly, the doctrine of res ipsa is not sufficient either to support the plaintiffs' motion for summary judgment or to defeat the defendant's cross

motion, since "[r]es ipsa loquitur leads only to the conclusion that the defendant has not exercised reasonable care, and is not in itself any proof that he was under a duty to do so" (Prosser and Keeton, Torts § 39, at 255 [5th ed 1984]). Since a violation of the code provision with respect to the confinement of dogs suspected of being rabid amounts to no more than a violation by the town of a general duty owed to the public at large, such violation, even if established, would not create a cause of action in plaintiffs' favor predicated thereon.

In the brief submitted to this court and upon oral argument, counsel for the plaintiffs asserted that because the dog's ownership was not determinable, State Sanitary Code § 2.14 (e) required the town to destroy the dog, and that had the town done so, the accident could not have occurred. Counsel has misread the provision, which merely confers an option upon the town. The town may confine a dog suspected of being rabid for a period of 10 days *or it may* cause the animal to be destroyed. Where ownership is determinable, confinement of the dog is at the owner's expense, and destruction of the animal cannot be decreed without the owner's approval. For obvious reasons, no approval is required for destruction where ownership is not determinable. But, the provision in question does not mandate the destruction of every dog guilty of having bitten someone simply because its ownership is not ascertainable. The town may confine such a dog for 10 days and then release it for adoption. Interestingly, while claiming in one portion of their brief that the destruction of the dog was mandatory, elsewhere in their brief plaintiffs seem to adopt our construction of the provision, for they state: "Had the Defendant complied with the requirements of the State Sanitary Law, for whatever reason, it would have immediately destroyed the animal on July 13, 1981, *or* have held the animal in confinement until July 20, 1981" (emphasis supplied).

However, whether the town violated the code by prematurely releasing the dog or by not destroying it, the result is the same. Liability cannot be imposed simply on the basis of a "but-for" analysis. Before plaintiffs can cast the town into liability to the plaintiffs, they must establish that in violating the code the town breached a duty of care owed to them. As we have already shown, the code provision was designed for the protection of the general public, and a municipality cannot be held liable for imperfectly performing governmental functions designed to protect the public in general.

Although plaintiffs' brief on appeal contains no mention of the allegations contained in paragraphs 9 and 10 of their complaint

(which leads us to believe that plaintiffs do not have much faith in them as a basis for recovery or as a ground for resisting defendant's cross motion for summary judgment), we, nonetheless, now turn to a consideration of plaintiffs' allegations (1) that the town had an obligation to refrain from releasing a dog for adoption that had been recently returned as being vicious, and (2) that the town had an obligation to advise Willie Williams of the vicious propensities of the dog that he was adopting.

Pursuant to Agriculture and Markets Law § 115, municipalities are authorized either to establish and maintain a municipal pound or shelter for dogs, or to enter into a contract with another municipality to provide such services. Manifestly, the philosophy underlying the establishment of a pound or similar facilities is that the public at large should be free from the intrusion of stray, unlicensed, and possibly disease-bearing animals. Quite clearly, in maintaining such a pound, a municipality is providing governmental protection to the general public. Occurrences directly relating to the performance of this governmental duty, such as the one at bar, fall within the ambit of the rule already discussed, namely, that in order to impose liability, the duty breached must be more than a duty to the general public. Thus, assuming, arguendo, that in the course of maintaining the statutorily authorized dog pound, the town had acted negligently in placing a stray dog for adoption which had been taken into the pound because it had bitten someone, plaintiffs are still faced with the problem of having to demonstrate that in so acting, the town breached a duty running to them as individuals, rather than to the public at large or to Mr. Williams, who was adopting the dog. Nowhere in their brief do plaintiffs point to any authority which supports their claim that in placing the stray dog for adoption the town breached a duty of care running to them as individuals, and our independent research has failed to uncover any such authority.

It may well be that Mr. Williams, as the person who had entered into a relationship with the town pursuant to which he adopted the dog in question and assumed responsibility for its conduct, was owed a special duty by the town to be warned of any dangerous propensities known to it, in order that he could take adequate precautions to protect himself and others. But Mr. Williams is not a party plaintiff, and the plaintiffs, who had no relationship with the town other than as members of the general public, cannot base their causes of action on the breach of any duty owed to Mr. Williams. In short, we are not prepared to hold that the town, in discharging its governmental duty to maintain a dog pound, in the course of which it takes in stray

dogs and places them for adoption, is liable for monetary damages to a third person bitten by such a dog after custody of the dog has been surrendered to the adopting party even though the dog has not yet arrived at its new home, but is still in the parking lot of the pound.

Although not spelled out in the record or the brief on appeal, plaintiffs' reference to the town's alleged failure to advise Mr. Williams of the dog's history seems to be based upon the assumption that if said history had been disclosed, Mr. Williams would have altered his conduct so as to have prevented the subject occurrence. Needless to say, we are not told what plaintiffs contend Mr. Williams would have done differently had he known of the dog's history. As it was, he had the dog on a leash, but apparently failed to rein in the dog tightly enough to keep it from reaching the plaintiff.

We also consider it noteworthy that paragraph 10 of the complaint is predicated on information and belief that the town failed to advise Mr. Williams that the dog had been brought in for observation because it had bitten a human being. Notwithstanding the fact that plaintiffs have conducted depositions and have been afforded the opportunity to develop evidence supporting this allegation, they do not and cannot point to anything in the record which supports it. Mr. Williams apparently was not deposed by the plaintiffs in order to determine whether he was informed of the dog's history. What is more, the record leads to the conclusion that he was so informed. The deposition of a town employee contained in the record revealed that the Town of Hempstead follows a practice of advising the person adopting such a dog that the dog being adopted "is a bite case dog". Thus, from the record it would appear that Mr. Williams was advised of the dog's history at the time of adoption. Perhaps this explains the plaintiffs' failure to claim in any of their motion papers or in their brief on appeal that Mr. Williams was not so informed, or to include in their papers or brief any reference to the allegations contained in paragraphs 9 and 10 of their complaint. This may also explain their election to base their right to recover solely on a claimed violation of the cited code provision.

In sum, the record establishes, as a matter of law, that the Town of Hempstead breached no duty owing to the plaintiffs when it released the subject dog for adoption, even though the release may have been premature. Accordingly, the order dated February 24, 1984, which, upon reargument, adhered to the prior determination denying summary judgment to either party should be modified to the extent of granting defendant's cross

motion for summary judgment and dismissing the complaint. In addition, the appeal from the order dated October 31, 1983 should be dismissed, as that order was superseded by the order granting reargument.

LAZER, J. P., MANGANO and GIBBONS, JJ., concur.

Appeal from an order of the Supreme Court, Nassau County, dated October 31, 1983, dismissed, without costs or disbursements. Said order was superseded by an order of the same court, dated February 24, 1984, which was entered upon reargument.

Order dated February 24, 1984, modified, on the law, by deleting therefrom the provision denying defendant's cross motion for summary judgment, and substituting therefor a provision granting said cross motion and dismissing the complaint. As so modified, order affirmed, without costs or disbursements. The order dated October 31, 1983 is modified accordingly.