Sidney Squire, J.
The State of New York, one of the defendants, moves to dismiss the claim (CPLR 3211, subd [a], pars 2, 7) because (a) the pleading fails to state a cause of action against the movant and (b) the same was untimely filed in the office of the clerk of this court and untimely served on the Attorney-General (Court of Claims Act, §§ 10, 11).
The claim was filed on October 17, 1975. It was served on the Attorney-General on October 22, 1975. Claimant demands $5,010,000 for his alleged illegal detention, arrest, incarceration and confinement "in criminal penal institutions, without just or legal cause, or authority”.
In claimant’s opposing affidavit he avers that as a judgment debtor, he was "detained” on April 18, 1975 by two deputies of the Sheriff of the City of New York, the other defendant herein, pursuant to a warrant issued under the authority of our State’s Judiciary Law. (§§756, 757, 770, 772, 773, 774, *344 775.) The cited sections are part of the statutory provisions for supplementary proceedings to collect money judgments.
A reading of the pleading (with every intendment liberally favorable to claimant) does not disclose a clear basis for the claimed liability of the State. The explanation in the opposing affidavit is claimant’s statement that he was "caused to suffer civil liabilities [sic] at the instance of the State of New York by its promulgation and implementation of the hereinabove unconstitutional Statutes.” On the oral argument, claimant’s counsel maintained (without submission of a brief) that the State should be liable to claimant because our Legislature enacted unconstitutional and punitive statutes, pursuant to which claimant was arrested and confined in jail.
Mr. Fonfa was imprisoned for about three months until either July 17, 1975 (the date pleaded in paragraph three of his claim) or until July 23, 1975 (the date stated in his opposing affidavit). This factual disparity would be crucial to a determination of the timeliness of the service and of the filing of the claim. However, that need not be resolved now in view of my legal conclusion that claimant has no cause of action against the defendant State as pleaded or as > amplified on the motion.
Claimant relies heavily on Vail v Quinlan (406 F Supp 951). This was a class action instituted under the Civil Rights Act in the United States District Court, Southern District of New York (74 Civ 4773). There were three named plaintiffs, all judgment debtors acting "on behalf of themselves and all other persons similarly situated”. The defendants were the Sheriff of Dutchess County, two Dutchess County Judges and three judgment creditors. A three-Judge court was convened (Vail v Quinlan, 387 F Supp 630) pursuant to section 2281 of title 28 of the United States Code. That court (Lumbard, Ch.J., MacMahon and Cannella, JJ.) declared that those seven sections of our State’s Judiciary Law were unconstitutional, being violative of the due process clause of our country’s Fourteenth Amendment, and enjoined further application of the contaminated sections.
The appeal therefrom, directly to the Supreme Court of the United States, has not been argued. In the interim, Mr. Justice Thurgood Marshall granted a stay of the injunctive provisions of the order appealed from.
Within a few months after the Vail decision the Appellate *345 Division, Second Department, decided Walker v Walker (51 AD2d 1029).
There the plaintiff-appellant attacked section 245 of our Domestic Relations Law dealing with contempt proceedings to enforce a judgment or order in a divorce action. Appellant asserted that the section denied him due process and that the Vail decision was controlling. The Appellate Division’s memorandum stated at page 1030 that: "it is clear that this court is not bound by that [Vail] determination (United States ex rel. Lawrence v Woods, 432 F2d 1072; 8 NY Jur, Constitutional Law, § 45; and see a discussion of this issue in the dissenting memorandum of Shapiro, J., in Matter of Greenwald v Frank, 47 AD2d 628, 631).”
The Appellate Division deemed it not necessary "to determine the correctness of the Vail decision”, because in Walker (p 1030): "appellant received all of the due process rights which were denied to the plaintiff in Vail. He had been previously imprisoned for violation of the alimony judgment, he was served with proper process bringing on this proceeding and he was represented by counsel who appeared and argued on his behalf. Thus, all of the alleged infirmities in the statutes held unconstitutional in Vail are not here applicable. The court there was dealing with a defaulting, impecunious debtor who did not appear at the statutorily guaranteed hearing, who was without any knowledge of the possible consequences to him and who had no counsel. The facts here are the opposite.”
At bar, claimant does not demonstrate how the factual situation in Vail was similar or analogous to his own predicament. His opposing affidavit merely states: "2. My claim is based upon my illegal and unconstitutional detention and arrest by the Sheriff of the City of New York, and my incarceration and confinement in a criminal penal institution, The Queens House of Detention, for alimony arrears.” Nowhere does he set forth whether there was a hearing, whether he was aware of the possible consequences to him and whether he had been represented by counsel.
For the present purposes of this motion, I shall assume (but not decide) that the attacked statutes were unconstitutional. On that basis, the legal question becomes: In this court of limited jurisdiction, can the State be held liable for its enactment of statutes later declared unconstitutional? My answer is: No.
*346 Historically, in this State our court was preceded by a Board of Claims. Over 60 years ago, the Appellate Division, Third Department, had affirmed the board’s award of damages to forest owners for destruction of trees by beaver. The State appealed to the Court of Appeals which reversed and dismissed the claim.
The opinion of Andrews, J., writing for that unanimous court in Barrett v State of New York (220 NY 423, 425), began:
"At one time beaver were very numerous in this state. So important were they commercially that they were represented upon the seal of the New Netherlands and upon that of the colony as well as upon the seals of New Amsterdam and of New York.
"Because of their value they were relentlessly killed, and by the year 1900 they were practically exterminated * * *
"In that year the legislature undertook to afford them complete protection, and there has been no open season for beaver since the enactment of chapter 20 of the Laws of 1900.
"In 1904 it was further provided that 'No person shall molest or disturb any wild beaver or the dams, houses, homes or abiding places of same.’ (Laws 1904, ch. 674, section 1.) This is still the law.” and then declared at page 429 that:
"the legislature did not exceed its powers * * *
"We hold, therefore, that the acts referred to are constitutional. But had we reached a different conclusion the respondents [claimants] would not be aided. We know of no principle of law under which the state becomes liable because of the adoption of an unconstitutional statute. ” (pp 429-430; emphasis added.)
The Board of Claims had been established by chapter 205 of the Laws of 1883. That entity became the Court of Claims (L 1897, ch 36) with Judges instead of commissioners. There was a "Court of Claims Act” established by chapter 922 of the Laws of 1920 which, as amended, was repealed in 1939 and reenacted as the present Court of Claims Act (L 1939, ch 860).
Section 8 of the act contains the State’s waiver of "immunity from liability and action”, declares its assumption of "liability and consents to have the same determined in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations, provided the claimant complies with the limitations of this article.”
*347 The oft-quoted opinion of Bergan, J. (later P. J.), in Newiadony v State of New York (276 App Div 59, 61) declared:
"The analogy between a government and an individual or corporation has some inherent limitations which the Legislature could not have overlooked in its revision of the Court of Claims Act. There are some kinds of activities in which no private citizen engages which are functions characteristic of a sovereign * * *
"It is commonly regarded that no liability arises from the public acts of the executive and judicial officers of the State exercised within the frame of their constitutional and legal powers. And when a general waiver of immunity and assumption of liability are related to cases where liability may be incurred in private activities, they could not attach themselves to the kind of function which has no private warrant or existence.
"How far the argument of full analogy of State to private acts may run will be illustrated if the consequences of legislative policies be considered. Often laws enacted for the public welfare are destructive of private activities. If an individual or corporation acted thus destructively there could be no doubt that a remedy would be readily found in the courthouse.
"But the inconveniences of legislative dispositions of policy are not a proper subject for claims against the government. No government could function thus hedged in by lawsuits. If it were the legislative intention to assume a liability on any such revolutionary scope, it would demand unmistakable language.”
It is my judicial determination that the defendant State is not liable to the claimant on the cause of action attempted to be pleaded against it and that this court does not have jurisdiction over that subject matter because in the words of Aulisi, J. (re another situation), in Bernkrant v State of New York (26 AD2d 964): "The waiver of immunity by the State * * * is inapplicable here where the activity complained of is sovereign in character and cannot be likened to functions which could be carried on by a private person or corporation”.
The legislative acts attacked at bar were sovereign in character. The cause of action against the State of New York is dismissed (CPLR 3211, subd [a], pars 2, 7; Court of Claims Act, § 8) because the claim does not state a cause of action against *348 the State and this court does not have jurisdiction of the subject matter.
On my own motion, the claim is also dismissed against the Sheriff of the City of New York because the Sheriff is not a State officer. Section 2 of the Public Officers Law is headed "Definitions”. A "state officer” is defined in the first sentence of the section; a "local officer”, in the second sentence. A sheriff is within the second sentence and not the first. It is my ruling that the Sheriff of the City of New York is a local officer and is not a State officer. An analogy is a District Attorney. That officer is a local officer and not a State officer for whose acts the State can be held liable. (Fisher v State of New York, 10 NY2d 60, affg 13 AD2d 608, affg 23 Misc 2d 935.)
Moreover, this is a court of limited jurisdiction (Court of Claims Act, § 9). It "has not jurisdiction of the person” of said defendant (CPLR 3211, subd [a], par 8).
A short form order is being signed (a) granting the motion of the defendant State to dismiss this case against the movant, and (b) dismissing this case against the defendant Sheriff of the City of New York, sua sponte.