OPINION OF THE COURT
Thomas J. Lowery, Jr., J.
The claimants seek damages caused by the discharge of rock *270 and water on their property allegedly due to the negligence of the State in the design and reconstruction of East Shore Drive (New York State Route 34) in the Town of Lansing, County of Tompkins, New York. The claims were bifurcated and jointly tried solely on the issue of liability.[1]
On June 12, 1975, D. & T. Franzese Bros. Inc., under a contract with the State of New York, commenced work on the reconstruction of that part of East Shore Drive known as Esty’s Hill. The project generally entailed the widening of the pavement and a reconstruction of the shoulders.
The road at this location ran generally south to north on an upgrade of approximately 5% for a distance of over one mile. The topography of the land west of the road, where the claimants’ property was situated, descended in grade towards Cayuga Lake. To the east of the road was a steep rock slope. A drainage ditch ran along the east edge of the shoulder at the base of the rock slope. Culverts had previously been constructed at intervals under the road. The latter permitted water to flow from the drainage ditch towards the lake.
During the course of reconstruction, and in accordance with design plans prepared by the State, light stone was placed along the eastern edge of the shoulder to form the foreslope of the drainage ditch on the east side of the highway. The loose stone was placed, in part, on top of bedrock and was not stabilized.
In formulating the design for the reconstruction of the road, no tests or studies were conducted by the State to determine the sufficiency of using light unstabilized fill material to construct the foreslope of the drainage ditch. The testimony of the claimants’ expert established that, under the circumstances the placement of the unstabilized material was not in accordance with good engineering practices prevailing at that time. Moreover, during the course of the construction, the State was advised by the superintendent for the general contractor that the light stone placement would not hold. He likened the same to putting marbles on a slide. The State failed to heed this warning and directed the contractor to continue to place the fill.
Thereafter, on July 11, 1976, a heavy, but not unprece *271 dented, rain fell on the area. The rainwater from this storm rushed down the drainage ditch, displacing the light stone material. Once the foreslope washed away, the shoulder itself began to erode. The material was carried downhill, blocking various culverts. As a result, water and debris was forced over the roadway onto the Poysa property. Further down the hill, water, stone, and other debris was channeled through a culvert opposite the Norris property. Large quantities of this material inundated the Norris home.[2]
state’s liability
These claims call into question those circumstances under which the State may be held liable for the negligent design of a highway. The State seeks to avoid liability, inter alla, through the imposition of the doctrine of governmental immunity, as set forth in Weiss v Fote (7 NY2d 579).
The holding in Weiss v Fote (supra) has generated some confusion. Although the decision appeared to be premised on the doctrine of governmental immunity, the court added the caveat that liability could be found where it is demonstrated that a duly executed highway design plan was evolved without adequate study or lacked a reasonable basis. Thus, in a practical sense, the standard enunciated was no different than the reasonable man standard applied to professional malpractice in the private sector. In neither case may the court, with the benefit of hindsight, question a determination that had a reasonable basis at the time that it was made. As with professional experts, a governmental planning body cannot be called to task merely because subsequent events prove its decision to be in error. Hence, in both cases, liability will ensue only if it is found that due care was not exercised in the making of a judgment, or that no reasonable official or expert could have accepted the course of action chosen. (Cf. Weiss v Fote, supra; Niagara Frontier Tr. System v State of New York, 57 AD2d 59; Zalewski v State of New York, 53 AD2d 781; Homere v State of New York, 48 AD2d 422; Williams v State of New York, 30 AD2d 611; St. George v State of New York, 283 App Div 245, affd 308 NY 681; Fischer v City of Elmira, 75 Misc 2d 510; Pike v Honsinger, 155 NY 201.) Therefore, it would appear that the doctrine of governmental *272 immunity has no application where the safety of an implemented highway design is questioned.
This conclusion is supported by an examination of the principles underlying the application of governmental immunity[3] as they have evolved to the present day. The notion that certain acts or decisions should not be reviewed by the court rests upon two separate doctrines; (1) public official immunity, and (2) separation of powers immunity.
The doctrine of public official immunity is based on the policy that the acts or determinations of certain officials should not be influenced by the danger of subsequent retaliatory suits for damages. (Rottkamp v Young, 21 AD2d 373, affd 15 NY2d 831.) Though historically and most commonly applied to acts of Judges (see Murray v Brancato, 290 NY 52; Lange v Benedict, 73 NY 12, writ of error dsmd 99 US 68; see, also, Stump v Sparkman, 435 US 349), the immunity has, however, been extended to legislators (East Riv. Gas-Light Co. v Donnelly, 93 NY 557) and to quasi-judicial determinations of other public officers outside of the judicial branch. (See Schanbarger v Kellogg, 35 AD2d 902, mot for lv to opp den 29 NY2d 485, opp dsmd 29 NY2d 649, cert den 405 US 919 [District Attorney]; Cunningham v State of New York, 71 AD2d 181 [Deputy Attorney-General]; Rottkamp v Young, supra [building inspector]; Matter of Town of Cheektowaga v City of Buffalo, 67 AD2d 812 [city commissioner of transportation]; see, also, Imbler v Pachtman, 424 US 409 [public prosecutor].)
Where it applies, the immunity is absolute, no matter how wrongful or injurious the act, and regardless of the breach of an otherwise recognized tort duty. (East Riv. Gas-Light Co. v Donnelly, supra; Murph v State of New York, 98 Misc 2d 324; Brenner v County of Rockland, 92 Misc 2d 833.) In such cases, public policy simply prefers the protection of the free exercise of judicial or quasi-judicial discretion over the right to seek redress for any injury resulting from an official’s conduct.
Clearly, Weiss v Fote (7 NY2d 579, supra) was not premised on this type of absolute immunity, since the holding there was predicated on a standard of reasonable care. The Weiss court, *273 in effect recognized that courts should be loathed to totally prohibit a review of governmental acts where there is no clear need to do so. (See Grimm v Arizona Bd. of Pardons & Paroles, 115 Ariz 260; see, also, Wood v Strickland, 420 US 308.) To hold that safety design functions are absolutely immune from review makes little sense where such functions are no different than the functions of professionals in the private sector. In both cases, the judgments made involve no more than the application of sound architectural or engineering practices. This being the case, there is no danger to the public interest in allowing such judgments to be reviewed in negligence suits. (Cf. Ferri v Ackerman, 444 US 193.)
The second predicate of immunity, separation of powers, is premised on the notion that the courts may not intrude into the policy-making decisions of co-ordinate branches of government. Thus, it has consistently been held that there is no liability for a breach of the executive or legislative duty to govern, which is owed only to the general public. (Riss v City of New York, 22 NY2d 579; Motyka v City of Amsterdam, 15 NY2d 134.)
In seeking to determine whether a particular act or decision involves a duty owed only to the general public, the courts have attempted to classify various functions under such amorphous titles as "governmental”, "discretionary”, "propriety”, or "ministerial”. The former two were applied to those cases where the court wished to apply immunity, while the latter two were applied where they did not. (see Separation of Powers and the Discretionary Function Exception: Political Question in Tort Litigation Against the Government, 56 Iowa L Rev 930.) The flaw in such an approach is apparent. Unlike public official immunity where an analysis of the nature of an act or decision is critical, separation of powers immunity should be determined by an analysis of the duty owed. (See Pratt v Robinson, 39 NY2d 554; Jones v State of New York, 33 NY2d 275; Gleich v Volpe, 32 NY2d 517.)[4]
The respect to highway design, certain decisions, such as those related to a public improvement’s necessity, requisite *274 capacity, or need, involve duties owed only to the general public. The implementation of an unsafe design, however, may impinge upon the recognized tort rights of an individual or definable class. (See Breed v Shaner, 57 Hawaii 656.) Liability in such a case is not predicated upon a violation of a duty to the general public, but upon the violation of the recognized tort duty. This distinction has been recognized for years in those cases that have held that governmental immunity does not apply where the implementation of an improper design of a public improvement results in the creation of a nuisance. (See Herman v City of Buffalo, 214 NY 316; Seifert v City of Brooklyn, 101 NY 136; see, also, Perrotti v Bennett, 94 Conn 533; Nuisance — Municipal Liability, Ann. 56 ALR2d 1415.) The court in Weiss v Fote (7 NY2d 579, supra) in effect recognized this distinction as well, when it backed away from absolute immunity and applied the reasonable man standard of professional malpractice to a case where there existed an underlying duty to keep a street or highway in a reasonably safe condition.
Simply stated, if the duty violated is one owed only to the general public, there is no remedy in law and the act or decision is immune from review. (See, e.g., Hoffman v Board of Educ., 49 NY2d 121; Donohue v Copiague Union Free School Dist., 47 NY2d 440 [educational malpractice]; Riss v City of New York, 22 NY2d 579, supra; Dutton v City of Olean, 60 AD2d 335, affd 47 NY2d 756; Bass v City of New York, 38 AD2d 407, affd 32 NY2d 894 [police protection]; Motyka v City of Amsterdam, 15 NY2d 134, supra; Steitz v City of Beacon, 295 NY 51 [fire protection]; Bellows v State of New York, 37 AD2d 342 [rehabilitation of prisoners]; Southworth v State of New York, 62 AD2d 731, affd 47 NY2d 874; Sanchez v Village of Liberty, 49 AD2d 507, mod 42 NY2d 876; Granger v State of New York, 14 AD2d 645 [administration or enforcement of statutes, ordinances, or regulations].) If, however, a duty arises from the existence of a special relationship (see, e.g., Florence v Goldberg, 44 NY2d 189; Schuster v City of New York, 5 NY2d 75; Zibbon v Town of Cheektowaga, 51 AD2d 448, opp dsmd 39 NY2d 1056; Baker v City of New York, 25 AD2d 770; Jones v County of Herkimer, 51 Misc 2d 130), or if an act or decision violates a pre-existing right of a person or definable class of persons, which right is recognized by the law of torts, then liability may be adjudged by the application of general tort principles. (See Jones v State of New York, 33 NY2d 275, supra; Caldwell v Village of Is. Park, 304 NY 268; McCrink v *275 City of New York, 296 NY 99; Landau v City of New York, 180 NY 48; Shaknis v State of New York, 251 App Div 767, affd sub nom. Doulin v State of New York, 277 NY 558; Drake v State of New York, 97 Misc 2d 1015; see, also, Stevens v Pittsburgh, 329 Pa 496; Bucholz v City of Sioux Falls, 77 SD 322; Gaines v Village of Wyoming, 147 Ohio St 491.) "For, it is not the label 'governmental’ which protects the planning decisions of a municipal entity; it is simply the fact that the law of negligence does not impose liability upon a government or, for that matter, upon an individual unless there is a breach of a duty.” (Pratt v Robinson, 39 NY2d 554, 563, supra.)
In the present case, it is clear that the doctrine of separation of powers immunity does not apply. Here, there existed an underlying duty recognized in the common law, namely, the landowner’s duty not to utilize his land in such a manner as to cause injury to abutting property owners. (See Bronxville Palmer v State of New York, 33 AD2d 412; 63 NY Jur [rev], Waters, § 223.) This duty was breached when the State adopted its defective plan without adequate study. There was no reasonable basis for its decision. It was certainly foreseeable that the construction of the drainage ditch, in the manner described, would result in injury to abutting property owners.
In addition, the State owed a continuing duty to review its plan in light of information subsequently acquired. (Niagara Frontier Tr. System v State of New York, 57 AD2d 59, supra.) This duty was violated when the State failed to heed the warning that the stone would not hold. The State’s conduct in this regard also created a foreseeable risk of injury to the claimants.
In sum, the court finds that the State was negligent and that such negligence was the proximate cause of the injuries sustained by the claimants. The court further finds that the claimants were free of any culpable conduct that may have contributed thereto.
Accordingly, the defendant’s motion to dismiss these claims is denied. Further, the claimants’ motion for judgment in their favor is granted, both on the law and on the facts. The clerk of this court is directed to enter separate interlocutory judgments in favor of the claimants on the issue of liability and to restore these claims to the Trial Calendar for trial on the issue of damages.

. At trial, decision was reserved on the receipt of various exhibits. At this time, claimants’ Exhibit No. 59e (Inspector’s Report of June 9, 1976 [IR-301]), is received. All other exhibits, upon which decision was reserved, are not received.

. Although a drop inlet had been placed by the claimant’s husband at the west end of the culvert, this was not a proximate cause of the injuries sustained.

. Sovereign immunity, i.e., the immunity premised on the State’s character or status as a sovereign, has been waived. (Court of Claims Act, § 8.) Despite the waiver, a vestige of immunity, related to acts of governing, has been retained. (See Herzog, Liability of the State of New York for "Purely Governmental” Functions, 10 Syr L Rev 30.) This vestige of immunity is most commonly referred to as "governmental immunity”.

. Recent decisions of the highest court in sister States have utilized this same duty approach for a variety of so-called "governmental functions”. (See, e.g., Grimm v Arizona Bd. of Pardons & Paroles, 115 Ariz 260, supra [release of inmate on parole]; Breed v Shaner, 57 Hawaii 656 [highway design]; Wilson v Nepstad, 282 NW2d 664 [Iowa; building inspector]; and Cracraft v City of St. Louis Park, — Minn —, 279 NW2d 801 [fire inspection of public building].)