OPINION OF THE COURT
Thomas J. Lowery, Jr., J.
The claimant seeks damages for personal injuries sustained when she was raped by one Edward Simcoe on July 18, 1973. At the time, Simcoe was in the custody of the New York State Department of Correctional Services, but had been allowed to return to his home under a temporary release program authorized by article 26 of the Correction Law. The claimant contends that the State was negligent in permitting Simcoe to be released into an unsupervised environment.
FACTUAL BACKGROUND
On March 12, 1973, Simcoe was sentenced as a youthful offender to a reformatory term of zero to four years for assaulting and robbing a woman on the street at knifepoint. During the course of the robbery, the woman had received a *580 cut on the hand. He was committed to the custody of the New York State Department of Correctional Services and was received at the reception center at Elmira, New York. Upon his arrival, he was given a psychiatric evaluation. This revealed that, although he had dissociai traits, he did not appear to be seriously hostile or dangerous. Based on this evaluation, Simcoe was assigned to Camp Georgetown, a minimum security facility, on May 21,1973.
At the time of his commitment, Simcoe was 16 years of age. Previously, he had other encounters with the law, dating as far back as August of 1967. On several occasions, he was institutionalized in facilities under the control of the New York State Division for Youth. These commitments were for offenses of a nonviolent nature. Just prior to his commitment here, he had been adjudicated a youthful offender for the crime of petit larceny and sentenced to a six-month term in the Onondaga County Penitentiary. This commitment was apparently predicated upon Simcoe’s breaking into a woman’s automobile with a screwdriver. In sum, there is no evidence that Simcoe had a pattern of violent behavior or had been involved in any prior sexual assaults.
While at Camp Georgetown, Simcoe did not evince any overt tendencies towards violence. Although he was involved in one altercation at the camp, this was of a minor nature. His behavior was described as being very immature and unstable. He did, however, confess to a fellow inmate that he had intended to commit rape at the time that he had perpetrated the armed robbery for which he had been incarcerated. Unfortunately, this conversation was not reported to State personnel until after the claimant was attacked.
On June 26, 1973, Simcoe applied for a temporary release. After a cursory evaluation of the application by the camp’s temporary release committee, the request was granted and Simcoe was given a four-day furlough on July 14, 1973. The State concedes that individuals on temporary release are not supervised and are on their own recognizance. At noon on the day that Simcoe was to return, the sexual assault on the claimant took place.
STATE'S LIABILITY
There exists a growing public concern over the State’s policy of releasing individuals from its penal institutions. This *581 concern is heightened where those released inflict injuries on innocent members of our society. When this occurs, there is a hue and cry to hold the State accountable for the resulting damage.
Concededly, there is a valid public interest in protecting society from the depredations of known dangerous individuals. Yet, on the other hand, there exists a recognized public interest in rehabilitating and reforming inmates confined to our penal institutions. In furtherance of this end, the Legislature, in its wisdom, has statutorily established certain bodies, such as parole boards and temporary release committees. These bodies are entrusted with the responsibility of striking a balance between the benefits that may arise from the release of an inmate and the danger to society in doing so. Such a task is not a finite science, but requires the exercise of judgment and discretion. With temporary release committees the decision is critical. For, unlike a prisoner freed on parole, the individual is released to a totally unsupervised environment. The question then, is whether the State may be held liable for the negligent release of an inmate by a temporary release committee or whether, as the State contends, such a determination is immune from review.
The immunity predicated on the State’s character or status as a sovereign has been waived by statute. (Court of Claims Act, § 8.) Although the statute contains no specific exception to liability, the courts have not considered the waiver to be absolute. It has been held that a vestige of immunity has been retained, relating to discretionary governmental functions. (Weiss v Fote, 7 NY2d 579.)
The label "discretionary” is somewhat misleading, since this factor alone would seem insufficient as a justification for immunity. For it is hard to imagine any governmental act that does not involve some measure of discretion. Under what circumstances, then, does the discretionary exception to liability apply? An analysis of the cases reveals that the justification for holding the State free from liability for its conduct rests on three separate grounds: (1) statute, (2) public policy, and (3) absense of a tort duty.
Preliminarily, the court notes that there exists no statute conferring immunity upon the acts or decisions of temporary release committees in this State. (See Correction Law, art 26.) Hence, this case is distinguishable from Martinez v California (444 US 277) where a statute was upheld that immunized the *582 State of California from liability for injuries caused by a prisoner released on parole.
The second ground for immunity is based on the rationale that the acts or determinations of certain public officials should not be influenced by the danger of subsequent retaliatory suits for damages. (See Scheuer v Rhodes, 416 US 232, 240; see, also, Jaffe, Suits Against Governments and Officers: Damage Actions, 77 Harv L Rev 209; Herzog, Liability of the State of New York for "Purely Governmental” Functions, 10 Syracuse L Rev 30.) Thus, in those cases where the interest in the free exercise of discretion outweighs the individual’s right to seek redress for his injuries, public policy dictates the application of immunity. When weighing the interests involved, consideration is given to the benefits to society that are derived from the free and unbridled exercise of an official’s discretion. This depends on the importance of the function he performs and, whether in fact, the danger of retaliatory suits would prejudice the proper performance of his duties. (See Imbler v Pachtman, 424 US 409.) Moreover, consideration is given to the existence of adequate alternative means to insure the propriety of the decision-making process. (See Separation of Powers And The Discretionary Function Exception: Political Question in Tort Litigation Against the Government, 56 Iowa L Rev 930.)
Historically and most common, public policy has immunized the acts of Judges. (See Murray v Brancato, 290 NY 52; Lange v Benedict, 73 NY 12, writ of error dsmd 99 US 68; see, also, Stump v Sparkman, 435 US 349.) Immunity has, however, been extended to quasi-judicial determinations of other public officials outside of the judicial branch. (See Schanbarger v Kellogg, 35 AD2d 902, mot for lv to app den 29 NY2d 485, app dsmd 29 NY2d 649, cert den 405 US 919 [District Attorney]; Cunningham v State of New York, 71 AD2d 181 [Deputy Attorney-General]; Rottkamp v Young, 21 AD2d 373, afld 15 NY2d 831 [Building Inspector]; Matter of Town of Cheektowaga v City of Buffalo, 67 AD2d 812 [City Commissioner of Transportation]; see, also, Imbler v Pachtman, 424 US 409, supra [Public Prosecutor].)
The decisions of temporary release committees do not enjoy the same status as those of a Judge. They do not play such an important role in the criminal justice system as would justify absolute immunity from liability. (See Grimm v Arizona Bd. of Pardons & Paroles, 115 Ariz 260; see, also, Wood v Strickland, *583 420 US 308.) Concededly, there is an interest in the rehabilitation of prisoners. The release of prisoners for a few days, however, contributes in only a small way to the furtherance of this interest. Moreover, there exists no means available to test the propriety of the temporary release committee’s decision to release a prisoner. There is no established procedure for the supervision of released prisoners. Although there is a token requirement for the prisoner to report to the local Parole Board, there exists no procedure to assure that this is done. In essence, once the prisioner is released, he is free to do as he pleases. In addition, unlike the decision of a Judge, there is no way for the public to challenge the determination to release, either by participation in the decision-making process or by appeal. Hence, the court concludes, that it is not appropriate to confer absolute immunity upon the decisions of temporary release committees.
 Even where absolute immunity is not applied, the law of negligence will not impose liability upon a government, any more than it would upon an individual, unless there has been a breach of a duty. (Pratt v Robinson, 39 NY2d 554; Southworth v State of New York, 62 AD2d 731, affd 47 NY2d 874.) In this regard, there is no duty to perform those governmental functions that involve only the conferring of a benefit. (Moch Co. v Rensselaer Water Co., 247 NY 160.) Although there may be a social or moral obligation to perform such functions, this alone has never been a basis for tort liability. (Restatement, Torts 2d, § 314.) Thus, in the absence of a special relationship (see Florence v Goldberg, 44 NY2d 189; Zibbon v Town of Cheektowaga, 51 AD2d 448, app dsmd 39 NY2d 1056), the State will not be held liable for a failure to provide police protection (Riss v City of New York, 22 NY2d 579; Dutton v City of Olean, 60 AD2d 335, affd 47 NY2d 756; Bass v City of New York, 38 AD2d 407, affd 32 NY2d 894), fire protection (Motyka v City of Amsterdam, 15 NY2d 134; Steitz v City of Beacon, 295 NY 51), or for a failure to enforce statutes or regulations. (Southworth v State of New York, 62 AD2d 731, affd 47 NY2d 874, supra; Sanchez v Village of Liberty, 49 AD2d 507, mod 42 NY2d 876; Granger v State of New York, 14 AD2d 645.) Where, however, State personnel, or an instrumentality in the State’s control, actively create a danger, there exists, a recognized tort duty owed to those within the ambit of the foreseeable risk. (Jones v State of New York, 33 NY2d 275; Caldwell v Village of Is. Park, 304 NY 268; Mc *584 Crink v City of New York, 296 NY 99; Landau v City of New York, 180 NY 48; Drake v State of New York, 97 Misc 2d 1015, affd sub nom. Madigan v State of New York, 73 AD2d 1031, mot for lv to app den 49 NY2d 705; Poysa v State of New York, 102 Misc 2d 269.)
Applying these principles to the present case, the court must conclude that a temporary release committee has the duty to exercise reasonable care to avoid the release of a prisoner, where to do so would create a foreseeable risk of injury. Although there may not have been a duty to pass penal laws or to incarcerate dangerous criminals in the first instance, once this has been done a special duty is established. (See Grimm v Arizona Bd. of Pardons & Paroles, 115 Ariz 260, supra; Restatement, Torts 2d, § 319.) For in such a case, the State has assumed the control of a potentially dangerous instrumentality, to wit, the dangerous prisoner. Now, if the prisoner should be released and injury results, the State’s conduct, rather than merely withholding a benefit, has played an active part in the series of transactions leading to the injury. In such a case, the temporary release committee has an obligation to make certain that it has before it, sufficient information on an inmate’s character to allow a rational decision to be made concerning the propriety of his release. If an inmate has a history of violent behavior, the committee is under an obligation to make further inquiry in order to determine whether that person’s release would present a foreseeable risk to the public.
The court must caution, however, that liability cannot be found merely because subsequent events proved that the decision of the committee was in error. The court may not substitute its opinion for that of the committee, where there was a reasonable basis for the decision at the time it was made. Liability does not result merely because reasonable minds could differ on the propriety of an inmate’s release. In sum, liability will ensue only if it is found that due care was not exercised in the making of the decision, or that no reasonable person could have accepted the course of action chosen. (Weiss v Fote, 7 NY2d 579, supra; Taylor v State of New York, 36 AD2d 878; Poysa v State of New York, 102 Misc 2d 269, supra.) As with all negligence cases, liability must be predicated on a failure to exercise reasonable care under the circumstances, rather than upon the mere occurrence of an injury.
*585 In the present case, serious questions were raised as to the adequacy of the temporary release committee’s inquiry into Simcoe’s character and background. He was never personally interviewed by the committee. He merely appeared before the committee chairman for five minutes in order to have the rules of temporary release explained to him. His parole officer was never consulted, despite the fact that he had recommended that Simcoe serve additional time. No current psychiatric report concerning Simcoe’s propensities was before the committee, nor did the committee possess sufficient expertise to make such an evaluation on its own.
The question that remains, however, is what would have been discovered had an adequate study been made. Tragically, the evidence before the court is insufficient to establish that, had the committee made an adequate study, its decision to release Simcoe would have been any different. Although there was ample indication that he was immature and somewhat unstable, there was no evidence that revealed that he had an overt propensity to commit rape. Moreover, there was no evidence that, had a current psychiatric evaluation been made, Simcoe’s latent propensities would have been discovered. In sum, the claimant has failed to establish, by a fair preponderance of the evidence, that the temporary release committee knew or should have known that freeing Simcoe would create a foreseeable risk of injury. (See, generally, Williams v State of New York, 308 NY 548.)
Hence, with the greatest reluctance, this claim must be dismissed, and the State’s motion made in this regard is now granted.
All exhibits, the receipt of which were reserved, are now deemed received and all other motions, upon which decision was reserved, are at this time denied.