*768 OPINION OF THE COURT
Gerard M. Weisberg, J.
This motion addresses the question of whether the State of New York can be held liable for the personal injuries to, and wrongful death of, a harness racing driver based on the promulgation and lack of implementation by the New York State Racing and Wagering Board (Board)[1] of regulations governing the wearing of protective safety helmets.
Laura A. Dunckley seeks recovery on behalf of her decedent, David J. Dunckley, a professional harness racing driver, who, allegedly, was involved in a mishap while participating in an event at Roosevelt Raceway on May 16, 1986.
Two theories of liability are set forth. The first alleges that the defendant State of New York, through the Board, approved safety helmets which "were so constructed and designed that they were unfit, unsafe and inadequate to protect harness racing drivers and which it knew, or should have known, would fail to protect harness racing drivers in the event of accident.”[2] The second theory asserts that the defendants "operated, controlled or maintained the racetrack in a dangerous and defective condition.”
Upon the defendants’ motion to dismiss pursuant to CPLR 3211 (a) (2) and (7) and Court of Claims Act § 10 (3), wé notified the parties of our intention to treat the motion as one for summary judgment and offered the parties an opportunity to submit additional papers. (CPLR 3211 [c].)
Based on that which has been proffered by the defendants, including the affidavit of James J. Gallagher, Chief of Racing Operations, it appears that at the time of the incident, the Board, by rule, prohibited all persons from jogging, training, warming up or driving a horse at any time on the premises of a harness racetrack unless he/she was properly wearing "a protective safety helmet of a type satisfactory to the board.” (9 NYCRR 4116.4.) In furtherance of this rule, by a memorandum dated August 27, 1984, the Board issued a directive that *769 effective January 1, 1985, for a helmet to be "satisfactory”, a test report had to be submitted that the helmet "meets the standards and requirements as-set forth in the Snell Memorial Foundation’s Report, '1984 Standard for Protective Headgear’
Prior to its effective date, however, the Board received numerous complaints from drivers and trainers at Roosevelt Raceway, including the Standardbred Owners’ Association, requesting and petitioning the delayed enforcement of this directive. The thrust of the complaints was that the new helmets (Snell helmets) were bulky, awkward, obstructed the drivers’ vision and were, according to some, unsafe. These petitioners also suggested to the Board that a failure to delay enforcement of the directive would be a disincentive to the manufacturers to improve their design.
As a result, the Board delayed the effective date of the directive until March 4, 1985 and then suspended indefinitely the requirement that Snell helmets be worn.
With respect to claimant’s allegation that the defendants negligently operated the racetrack, Mr. Gallagher’s affidavit states that the Board does not operate, maintain or control racetracks.
In response, the claimant submitted only the affirmation of her attorney which failed to offer any evidence as to the kind of headgear which the decedent was wearing,[3] that the Board acted unreasonably in suspending its directive requiring the use of Snell helmets, or that the defendants actually operated or maintained Roosevelt Raceway.
In enacting section 8 of the Court of Claims Act, the State waived that immunity which it had hitherto enjoyed solely because of its sovereign character and assumed liability for negligence under the same rules of law applicable to individuals and corporations. (Weiss v Fote, 7 NY2d 579.) It is the general rule, however, as has been often stressed, that the *770 State has retained its immunity when the governmental action complained of is not ministerial but involves the exercise of discretion. (Santangelo v State of New York, 101 AD2d 20.) When the action involves the exercise of discretion of a judicial or quasi-judicial nature, the immunity is absolute. (Tango v Tulevech, 61 NY2d 34; Turcotte v Fell, 84 AD2d 535.) Similarly, where the governmental action is sovereign in character and foreign to any activity which could be carried on by a private person, then immunity is again absolute. (Williams v State of New York, 90 AD2d 861; Bellows v State of New York, 37 AD2d 342; Chung v State of New York, 122 Misc 2d 676; Fonfa v State of New York, 88 Misc 2d 343.)
The policy behind the former immunity is that the acts or determinations of government officials exercising discretion should not be influenced by the danger of subsequent retaliatory suits for damages. (Poysa v State of New York, 102 Misc 2d 269, 272.) The predicate for the latter immunity is the notion that the courts may not intrude into the policy-making decisions of coordinate branches of government. (Poysa v State of New York, supra, at 272.) Moreover, this immunity often finds its expression in the concept that the duty of the State to act pursuant to its police power is a duty owed only to the public-at-large. Therefore, absent the assumption of a special duty to the individual claimant (see, De Long v County of Erie, 60 NY2d 296), the breach of this duty will not cast the State in damages, effectively immunizing it. (Southworth v State of New York, 47 NY2d 874; Hill v City of Schenectady, 91 AD2d 1126; Haskell v State of New York, 81 AD2d 953.)
Not all actions of a discretionary nature, however, have received the full immunity accorded in Tango and Southworth (supra). In Weiss v Fote (7 NY2d 579, supra), involving suit against the City of Buffalo based on a negligently designed traffic light interval, the Court of Appeals extended only a limited immunity to the discretionary acts of the officials devising the safety plan, holding that liability could attach but only where "predicated on proof that the plan either was evolved without adequate study or lacked reasonable basis.” (Weiss v Fote, supra, at 589.)
While the Weiss limited immunity rule has been applied in numerous cases involving various aspects of highway safety plans (Santangelo v State of New York, 101 AD2d 20, 25, supra), it has also been applied in cases involving other aspects of governmental decision making. (See, Eiseman v State of New York, 109 AD2d 46, revd on other grounds 70 *771 NY2d 175 [establishment of eligibility criteria for disadvantaged students]; Southworth v State of New York, 62 AD2d 731, affd on other grounds 47 NY2d 874, supra [design of experimental driver rehabilitation program]; see also, Alva S. S. Co. v City of New York, 405 F2d 962 [2d Cir 1969] [order of New York City Fire Commissioner].) This has prompted at least one court to observe that the decision whether to apply Tango or Weiss (supra) to a given set of facts is a "difficult question”. (Santangelo v State of New York, supra, at 27.)
In the case before the court, the only regulation that was in effect required the use of helmets "satisfactory” to the Board. This rule only empowered the Board to regulate the use of helmets at such time when proper standards might be developed. The rule, therefore, did not set forth any specific standard of care which could have been breached by the defendants. (Turcotte v Fell, 68 NY2d 432; Rosensweig v State of New York, 5 AD2d 293, affd on other grounds 5 NY2d 404.)
Moreover, claimant has not shown that the promulgated rule in effect at the time of the incident, nor the directives issued thereunder, were anything but a manifestation of the exercise of the State’s sovereign powers. By statute, only the defendants may regulate the activity of harness racing, and no private person is given this authority. (See, Racing, Pari-Mutuel Wagering and Breeding Law § 101.) Such activity is characteristic of a sovereign and the actions in exercising this statutory power are sovereign in nature. (Williams v State of New York, 90 AD2d 861, supra.) Thus, in the absence of the assumption of a special duty by the defendants to the claimant’s decedent, which is not even alleged, immunity attaches to its exercise. (Haskell v State of New York, 81 AD2d 953, supra; Granger v State of New York, 14 AD2d 645; Classen v State of New York, 131 Misc 2d 346; Barcelo v State of New York, 89 Misc 2d 399.)
Finally, assuming, without deciding, that the Weiss rule of qualified immunity were to be applied here, the result would be the same. (Cf., Discenza v New York Racing Assn., 134 Misc 2d 3.) Claimant has offered no evidence to establish that the Board’s decision to defer the requiring of Snell helmets lacked a rational basis. Rather, the only evidence presented shows that the decision was prompted by the overwhelming negative response of the drivers and trainers, on safety grounds, to the use of such headgear.
Once, as here, a defendant has made a prima facie showing *772 that the claim has no merit, the burden shifts to the claimant to lay bare whatever evidence he/she may have to show that issues of fact, requiring trial, exist (Cohen v City of New York, 128 AD2d 748), or to demonstrate an acceptable excuse for the failure to do so. (Zuckerman v City of New York, 49 NY2d 557.) The claimant has done neither.
Similarly, with respect to the issue of the alleged hazardous condition of the racetrack, in the face of Mr. Gallagher’s affidavit denying ownership, operation or control of the facility, claimant has submitted nothing.[4]
The burden of going forward having been shifted to the claimant and she having failed to meet this burden, the granting of summary judgment is appropriate. (Zuckerman v City of New York, 49 NY2d 557, supra; Burkhard v State of New York, Ct Cl, Apr. 2, 1987, Rossetti, J.)
Upon the foregoing, defendants’ motion for summary judgment is granted and the claim is dismissed. In light of our holding, we have not considered the argument with respect to timeliness.

. The Board, created within the State’s Executive Department (see, Racing, Pari-Mutuel Wagering and Breeding Law § 101), is not an independent entity and was improperly named as a defendant in the claim. (Tillot v New York State Thruway Auth., 107 Misc 2d 229.)

. In the papers before the court, there is no indication as to what kind of helmet the deceased was wearing at the time of the accident. However, in view of the basis for our determination, the type of headgear used is irrelevant.

. The claim, as filed, charges the defendants with approving unsafe helmets. In the face of defendants’ aifidavit that no particular helmets were approved, the claimant, by means of her attorney’s affirmation, and without amending the claim, now apparently would predicate liability on the defendants’ failure to require the use of Snell helmets. In the absence of evidence to the contrary, it would appear that the claimant’s decedent, having voluntarily chosen which helmet to use, and to participate in an obviously dangerous contest, assumed the risk of the alleged injuries. (Turcotte v Fell, 68 NY2d 432; Rosensweig v State of New York, 5 AD2d 293, affd on other grounds 5 NY2d 404.)

. It is also noted that, concerning the condition of the track, the claim is legally deficient as a pleading. Only such conclusory allegations as "dangerous” and "defective” are set forth. (See, Matter of Sarlat v State of New York, 119 Misc 2d 369.)